## Sutton *vs* Menser.

### APPEAL FROM THE HOPKINS CIRCUIT.

*Seminary claims.    Actual settlers.    Redemption.    Patents.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

EJECTMENT.

*Case* 91.

*April* 30.

The case stated.

SUTTON as lessor of the plaintiff, brought an action of ejectment against Menser, on the trial of which under the instructions of the Court asked by the defendant's counsel, and the refusal of instructions asked by the lessor, the jury found a verdict for the defendant, and the lessor has appealed to this Court.

The lessor claims under a patent issued the 12th of March, 1840, founded on a commissioners certificate, issued in 1798, and surveyed the 3d of February, 1801.

The defendant claims under a patent bearing date the 12th of November 1817, founded on a survey made by virtue of an act of Assembly, entitled "an act for the benefit of Joshua Cates," approved January 28th 1817, which refers to a previous act, approved January the 6th 1816. It appears from the first recited act that Cates had become the purchaser of the lands belonging to the Harrison Seminary, and an authority given to him to make locations and surveys "in all respects according to the *regulations, restrictions, privileges and limitations* formerly prescribed and allowed in cases of *Seminary lands*, except that the entries, surveys and grants shall be in the name of said Joshua Cates."

SUTTON
*vs*
MENSER.

Instructions given and refused by the Circuit Court.

Instructions were asked by the lessor, in substance, that the patent of Cates was void under the statutes, restrictive of the location and survey of Seminary claims, so far as the same interfered with the prior survey of the lessor, founded upon an original certificate, which were refused and instructions given at the instance of the defendant, predicated upon the forfeiture to the State, of the lessor's certificate prior to the survey and grant to Cates, and the redemption afterwards, in substance that the lessor's patent was void.

Instructions tho' hypothetical and correct in the abstract, should not be given by the Court without evidence conducing to prove the proposition supposed.

The evidence of the forfeiture or redemption of the lessor's claim, or when or whether either occurred, is not shown in the record before us. If proven in the Court below, it has been omitted in the bill of exceptions. A case of forfeiture and redemption of the lessor's claim, might no doubt have been made out, which would have rendered the patent a nullity, so far as the same interfered with the survey of Cates. But in the absence of such proof there is no foundation laid upon which to predicate the instruction given.

But as there can be little doubt from the instructions of the Court to the jury, as to the effect of the forfeiture and redemption of the lessor's claim, that there was proof adduced on the trial showing the forfeiture and redemption, but which has been casually omitted in making out the bill of exceptions, and for that reason the judgment of the Circuit Court must be reversed and a re-trial had, upon which the same questions will arise, and being requested by the counsel, as the means of avoiding a second appeal to this Court, we have no objections to express our views as to the proper construction of the statutes referred to.

The 2nd section of the act approved 31st January 1814, (2 *Stat. Laws*, 978,) provides "that no survey hereafter made, by virtue of any entry on a removed certificate or any *entry* or *survey made* on a *Seminary claim*, shall interfere with any *survey* now made, or which shall hereafter be made, founded on any entry made by virtue of an original certificate, and *such part* so interferring shall be *null* and *void*."

And the statute of 1814 approved February 1st 1814, (2 *Stat. Laws,* 1006,) gives to Seminary institutions &c., further time to survey &c., these Seminary donations with proviso "that no location or survey of any donation of Seminary lands, made by virtue of this act, shall in any wise interfere with any lands, appropriated by any of the laws of this Commonwealth, by *certificate, entry* or *survey,* &c. And all locations and surveys made, and *grants* obtained under the provisions of this act, so far as the same shall be found to interfere with the claims aforesaid, shall be entirely *null* and *void.*"

The patent to Cates under which the defendant claims, issued subject to the "*restrictions* and *limitations*" imposed by those two acts. .

The act approved the 21st January 1814, (2 *Stat. Laws,* 975,) after allowing the privilege to redeem upon prescribed terms, provides in the 11th section "That no person or persons, other than an actual settler, shall be authorised to redeem land, which has been forfeited to the Commonwealth for a failure to redeem the same within the time authorised by law, so as to give him her or them any right, title or claim to the same, when it shall interfere or conflict with, the *survey* of a person *actually settled* on the land, or Seminary claim or any other claim *entered, surveyed* or *patented,* and should a *grant* issue, it shall be *void* so far as it does so interfere." The act approved January the 2d 1815, (2 *Stat. Laws,* 978,) after extending the privilege of redemption upon prescribed terms, in the 10th section inhibits the right to redeem, except by the actual settler, so as to give title, when the claim shall interfere or conflict with the *survey* of any person *actually settled* on the land or with any *entry* or *survey made* by *virtue* of a *Seminary* warrant, and declares the patent void as in the foregoing act, so far as it does so interfere.

This statute having droped the words "*or any other claim entered, surveyed, or patented,*" contained in the statute of 1814, above quoted, and consequently not having, as they conceived, afforded protection to the claims omitted, against forfeited and redeemed claims, by a supplemental act of the 8th of February, 1815, (2

*Stat. Laws*, 981,) re-enacted the restriction contained in the 11th section of the act of 1814, before quoted, and extended it so as not only to afford protection to the claims omitted in the statute of 1815, but to any claim which had *been previously redeemed*, and the *instalments due paid thereon*, or any settler on vacant land, or improver or cultivator of vacant lands adjoining his settlement.

Though subsequent statutes have been enacted allowing redemptions and droping the restrictions contained in the foregoing acts, in the case of *Dallam* vs *Handley*, (2 *Marshall*, 518,) those statutes were adjudged not to be repugnant to, or inconsistent with the provisions of the foregoing statutes, and did not amount to a repeal of them, but that they all should be taken and construed *pari materia*, and that the privilege to redeem allowed by the subsequent statutes, must be regarded as allowed, subject to the limitations and restrictions contained in the statutes of 1814 and 1815, before quoted. It appears further, that all the subsequent acts that were enacted, until after the survey and emanation of the defendant's patent, contained the restriction against the right to redeem, so as to affect the survey of a person actually settled on the land, or with any *entry* made by *virtue* of a *Seminary claim.*

This being the case, the question arises, was the lessor authorized to redeem, so as to interfere with the survey of the defendant, if he or those under whom he claimed was, actually settled on the land at the time of redemption, or if not being so settled on the same, he or any other under whom he claimed, held the land by entry, survey or patent, under the claim of Cates, at the time of the redemption.

We are satisfied that if the lessor's claim was forfeited *before* and redeemed *after* the settlement of the defendant, or after the emanation of the grant to Cates, that his patent is void so far as it conflicts with the settlement claim of the defendant, or the patent of Cates, if the lessor or his assignee was not *an actual settler* within the contemplation of the act referred to. And we are further satisfied that he or his assignee must be an *actual settler*

on the *land* to entitle him to redeem, exempt from the limitations and restrictions imposed upon the privilege. And we incline to the opinion that he should be a setter on the land at least at the time of the redemption, if not at or before the settlement of the defendant, or the emanation of the grant to Cates, and perhaps at the date of the enactment of the statutes of 1814 and 1815, before referred to. But as the question, from the proof now before us as to his settlement, may, and probably will not arise, we do not now deem it necessary or proper to settle the question as to the *time* when he should be a settler, to exempt him from the *restrictions* upon the right to redeem. But treating him as never having been a setter on the land, which the proof indicates, we are satisfied that he was not authorized to redeem, so as to give him any title against the right of the defendant as a settler, or against the *patent* of Cates, had he been no settler on the land.

It was well known to the Legislature that numerous certificates had been illegally issued on the application of others than settlers, who were alone entitled to obtain them, until the country had become shingled over three or four fold, with divers conflicting claims. That many of those claims had been abandoned or had fallen into the hands of speculators, and held up without paying the State price on the same, with a view, at some future day, as lands increased in value, to locate, or remove and redeem and patent them, as their own interest might require. The State, by this stratagem, was kept out of the money due, and others who might in the mean time, settle on or otherwise appropriate the same land, paying the State price thereon, were in danger of loosing the land, if an indiscriminate privilege to redeem should be allowed. To guard against this evil, while all were allowed to redeem, none but actual settlers were allowed to redeem so as to conflict with the claim of an actual settler, &c., or with a *Seminary* claim, or any other claim entered, surveyed, or patented, or with any claim whatever which has been *previously redeemed*, and the instalments due paid thereon, and the patent is declared void,

SUTTON
*vs*
MENSER

which had been previously redeemed and the instalments paid.

Under the statute of 1814 and 1815, and subsequent statutes, allowing redemption of lands forfeited for non-payment of the instalments due thereon, no redemption could take place by one not an actual setler, so as to interfere with an actual settler claiming *under any entry, survey or patent*, or Seminary claim, or other claim entered, surveyed or patented, or any claim whatever,

SUTTON
vs
MENSER.

so far as the same shall interfere with the claims so pro-
tected.

The statutes of
31st Jan. and 1st
Feb. 1814, pro-
hibits the entry
and survey of
Seminary claims
so as to inter-
fere with prior
surveys upon o-
riginal certifi-
cates, and de-
clares such en-
try and survey as
to the interfe-
rence, void.

But it is contended that by the second section of the
act of the 31st January, 1814, and the act of 1st Februa-
ry, 1814, before quoted, Cates was not authorized to lo-
cate or survey his Seminary claim, so as to interfere with
the prior *survey* of the lessor, founded on an original cer-
tificate, and that having done so, in contravention of the
provisions of those acts, that his patent is void. The
statute of January, 1814, does not declare the *patents*
void. It prohibits the entry and survey of a Seminary
claim, and declares *such part* so interfering, &c., *void.*
We understand the prohibition and denunciation of the
statute, to be against the *entry* and *survey*, and not specifi-
cally against the *patent.*

Can a patent be
declared void at
law when the en.
try and survey is
declared void by
statute, without
any denuncia.
tion against the
patent thereon—
Qu.

It may well be doubted, therefore, whether the patent
can be impeached at law, by the proof of the fact indi-
cating the illegality of the *entry* and *survey*, as it has
often been decided by this Court, that nothing less than a
positive statutory denunciation against a *patent*, declaring
*it void*, or a declaration that it is fraudulent, in a given
state of case, or some equivalent denunciation in refer-
ence to or against the *grant*, will authorize, at law, a col-
lateral enquiry into its validity or invalidity. But the
statute of 2d February, 1814, *supra*, is made to operate
upon the *grant*, when the same is issued in violation of
its provisions. And there can be but little question that
the location and survey of Cates' Seminary claim falls
under the prohibition of this enactment. The lessor's
survey seems to have been made before the entry or sur-
vey of Cates' claim, and seems to have been made by
virtue of a valid entry, on a valid certificate, judging from
the face of the patent.

This Court will
presume that
there was an en-
try and survey
for land in the
proper county,
when a grant has
issued, in order
to give to the
grantee the pro-
tection intended

The entry or certificate is not produced, but as the
survey was made and the patent has issued thereon, we
must presume that an entry and certificate for land lying
in the *county*, was produced to the Surveyor, and that by
virtue thereof, he had authority to make the survey in the
*county* where it was made. If the Surveyor had the au-
thority to make the survey in the county, the *survey*,
though it may not conform to the calls of the certificate

or entry, must be regarded as an appropriation of land within the contemplation of the act of the 2d February 1814 *supra*, and would be entitled to the protection of that act. A case might occur it is true upon the production of the certificate and entry, that the *survey* would not be entitled to the protection of the Statute.

SUTTON
*vs*
MENSER.

br the act of 2d Feb. 1814, the contrary not being proved.

If it should turn out that the certificate was granted to lie in another county than that in which the survey was made, or if removed, that it was removed by the County Court of the county as it should be, in which the original certificate was located or was granted to lie, and surveyed in another county, (as was not unfrequently the case) as such survey thus made would be made *without author-ity* or *color* of authority, for making it, on the part of the Surveyor of the county, in which it was made, such survey could no more be regarded as an appropriation or as a survey made by virtue of or founded upon a certificate or entry, than if the same had been made without the authority of either, or as a mere experimental survey; and of course would not be entitled to the protection contemplated by the act.

But presuming that it was correctly made, then Cates' patent is declared *void* so far as it interferes with the survey. So also is the patent of the lessor declared void if the same was forfeited and redeemed, so far as it interferes with the *entry, survey* or *patent* of *Cates*.

As the location and survey of Cates were made without legal authority and against the inhibitions of the statutes of January and Feburary 1814, it is contended, that his entry, survey and patent are not such as to entitle him or those claiming under him to the protection of the statutes, before referred to, restricting the right to redeem forfeited claims.

If the entry and survey might not be protected while in an inchoate state, which we need not determine, we cannot doubt that if the patent issued before the right to redeeem was exercised, or before the redemption was made, that the *patent* is protected, and secures to the grantee the Commonwealth's right to the land, against the right afterwards to redeem by the lessor, It is a *pa-*

Tho' the statute of Jan. and Feb. 1814, *supra*, may not have protected the holder of an entry and survey from the effect of redemption by another, which is not decided, the patent is a protection from such redemption.

*tent,* and the lessor not being a settler, was not author-ized to redeem so as to interfere with it.

In the case of *Dallam* vs *Handley,* (2 *Mar.* 418,) the defendant's patent was founded upon a Kentucky Land Office warrant, which was expressly prohibited by the act under which it originated, from coming in conflict with entries or surveys before made; yet the Court say that the defendant is an actual settler, and claims by sur-vey, and his *survey* is protected. So in the case before us, the defendant claims under a *patent,* and his *patent* is protected by the express language of the act against the lessor's right to redeem. Besides, if the defendant's pat-ent is void so far as it conflicts with the lessor's patent, so is the lessor's patent void so far as it conflicts with the defendant's patent, and the defendant's patent being the elder, and the nulity of each being declared only so far as they conflict with each other, the elder patent should prevail.

Again, the statute of 1816 (2 *Stat. Laws,* 983,) is con-tinued in force by subsequent enactments, down to a pe-riod subsequent to the entry, survey and patent under which the defendant claims, and that statute expressly restricts the right of redemption except by the settler, where the redeemed claim may conflict with the survey of a settler, *or with any entry or survey* made by virtue of a Seminary warrant, which must be regarded as adding strength to the protection afforded to the defendant's claim against the lessor's right to redeem, if not to sanc-tion the validity of his patent.

Again, if both patents be void, then the better is the condition of the defendant. As the lessor must recover upon the strength of his own title, if his grant be void he cannot succeed, though the defendant was a mere naked possessor, much less when the defendant holds under the *elder* grant from the Commonwealth.

But the facts being pretermitted in the bill of excep-tions, showing the forfeiture and redemption of the les-sor's claim, the judgment of the Circuit Court is revers-ed and cause remanded, that a new trial may be granted.

*Morehead & Reed* for appellant: *McHenry* for appel-lee.