CASE 53—CAVEAT—OCTOBER 20.

# Flippin vs. Hays et al.

3me215
90  534

APPEAL FROM MONROE CIRCUIT COURT.

By the 10th *section of chapter* 102 *of the Revised. Statutes*, the register of the land office is authorized to receive plats and certificates of surveys after the expiration of the time therein allowed for returning the same, but in such case the legal title shall take effect only from the date of the patent. Where the plat and certificate are returned within the time prescribed the legal title will take effect from the date of the survey. Although the return is not made in time, the claim or inchoate title still subsists and may be perfected by grant, but the legal title dates from the date of the patent.

By the act of 10th March, 1856, the legislature did not merely intend to extend the time to register surveys, but also that the legal title should take effect from the date of the survey if such survey was registered before the 1st of January, 1860.

Where, in pursuance of a warrant, vacant land has been entered and surveyed, a subsequent entry or survey of the same land or any part thereof is void to the extent of the interference, and such subsequent survey, being void, is not a "conflicting claim" within the meaning of the saving of the second section of the act of 10th March, 1856.

One who has, in pursuance of a warrant, entered and surveyed vacant land, may proceed by caveat to restrain a claimant under a subsequent survey from carrying it into grant.

In February, 1852, F., under a treasury and two county court warrants, made a survey of 174 acres of vacant land, but made no return of the plat and certificate of survey to the register's office until the 21st of June 1856. On the 3d of June, 1856, E. and H., by virtue of a county court warrant, surveyed 200 acres, embracing all the land F. had surveyed, except about ten acres, and returned their plat and certificate of survey on the same day that F. returned his. F. filed a caveat in September afterwards to restrain the emanation of a grant to E. and H. *Held*, that the survey of the latter, to the extent of the interference, is void; and that the former is entitled to have his survey carried into grant, the legal title to take effect from the date of his survey. (*Rev. Stat., chap.* 102; *Ib.,* 2 *vol. Stanton's ed., page* 433, *act of* 1856.)

RITTER & SAMPSON, for appellant.

LESLIE, GATEWOOD and EVANS, for appellees, cited *Revised Statutes*, 677 ; *act of* 10th *March*, 1856, 1 *sess. acts, page* 109 ; *act of* 10th *March*, 1854, *sess. acts, page* 175.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

In February, 1852, James Flippin had a survey made of 174 acres of land in Monroe county, upon a treasury and two county court warrants from the county court of Monroe county.

On the 3d of June, 1856, James B. Evans and Robert J. Hays, by virtue of a warrant from the same court, caused a survey to be made for 200 acres, interfering with, and including in that survey all the land Flippin had previously surveyed except about ten acres.

Flippin made no return of the plat and certificate of his survey to the register's office until the 21st of June, 1856, and on the same day Evans and Hays returned their plat and certificate of their survey to the register's office.

In September, 1856, Flippin filed a caveat to restrain the emanation of a grant to Hays and Evans upon their survey, and the court below having dismissed his caveat, the case is brought here by appeal.

It may be assumed that prior to Flippin's survey the land was vacant and unappropriated.

Maxey, who was the surveyor of Monroe county, proves that on the 18th day of February, 1852, he surveyed the land fo Flippin, who had previously entered it; but after he made the survey Flippin neglected to return the plat and certificate thereof to the register's office, or to furnish him the money to make the return and pay the necessary expenses; that in the fall of 1855 appellee, Hays, called upon him to know the condition the title to the land was in, and he gave him full information in relation to Flippin's claim, and read to him the survey and the date of it. Hays made some proposition to him, in relation to an effort to appropriate the land, which Maxey declined; he then procured Evans, who was a deputy under Maxey, to make the entry on the 25th of December, 1855, which survey, as Maxey proves, covers all the land embraced in Flippin's except about 10 acres.

It is proved by other witnesses that before Flippin surveyed the land he had deadened some timber, made some brush heaps upon it, and had claimed it from the time of the deadening of the timber up to the time of filing the caveat; it is also proved that appellees had cleared a small part of the land and sowed turnips upon it sometime in 1856—but we do not deem this testimony material except so far as it shows the confliction of the two surveys.

The land, being unappropriated at the time Flippin made his survey, which he had made in conformity to the law, it was an appropriation of the land embraced by it, and, although he did not perfect his title by a return of the plat and certificate to the register's office within the time prescribed, and thereby place himself in a condition to obtain a patent, he had nevertheless acquired an inchoate title; and the legislature having, by an act approved the 10th of March, 1856, extended the time for the return of plats and certificates to the 1st of January, 1860, and having, on the 21st of June, 1856, returned the plat and certificate for registration, he now insists that the survey of appellees was illegal, and that he has a right to have his title perfected by grant. The appellees, on the other hand, insist that as Flippin had failed to return the plat and certificate of his survey within the time prescribed by law, as it stood prior to the passage of the act of 1856, that they, by their entry of 1855, acquired a claim to the land, which was not affected by the last named act, as by the 2d section of said act it is provided that it shall not affect any conflicting claim.

By a failure to return the plat and certificate of his survey, Flippin did not forfeit his right, because, by the 10*th section of chapter* 102, *of Revised Statutes*, entitled "Treasury Warrant Claims," the register is authorized to receive plats and certificates of surveys, after the expiration of the time therein allowed for returning the same; but in such cases the legal title shall take effect only from the date of the patent; when, if the plat and certificate had been returned within the time prescribed, the legal title to the land would have taken effect from the date of the survey. The claim or inchoate title acquired by the survey still subsists, and may be perfected by grant, but the legal title dates from the date of the grant, and not from the date of the survey, as it would have done if the plat and certificate had been returned within the prescribed time.

By the act of 1856 the legislature did not merely intend to extend the time to register surveys, but that the legal title to the land should take effect from the date of the survey, if such survey was registered before the 1st of January, 1860. Such, we conclude, must have been the intention of the legislature,

because, as before noticed, the right to have the surveys registered existed prior to the passage of the act of 1856.

We come now to consider what title or claim appellees acquired to the land by virtue of their survey, for it must be conceded that if they had a conflicting claim to the land, that claim was not affected by the act of 1856, *supra*.

The *8th section of chapter* 102 *Revised Statutes*, reads thus: "None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent, made or issued under this chapter, *shall be void* so far as it embraces lands previously entered, surveyed, or patented." To the extent, then, that Flippin's survey covers the land, that portion had been entered and surveyed previous to appellees' survey; and, by the *8th section, supra*, their survey *was "void;"* and, being void, it cannot be a conflicting claim, and consequently not within the saving of the *2d section of the act of* 1856.

Flippin had such an interest in the land as authorized him to proceed by caveat to restrain the appellees from carrying into grant their *illegal* and void survey, to the extent of the interference.

Wherefore, the judgment of the court below is reversed, and the cause remanded, with directions that, to the extent of the interference of the two surveys, as shown by the survey of Maxey filed in the record, the issuing of any patent to appellees be perpetually enjoined; and for a judgment and for further proceedings consistent with this opinion.