CASE 83—PETITION EQUITY—OCTOBER 11.

## Bryant & Co. v. Wood & Co.

APPEAL FROM WHITLEY COURT OF COMMON PLEAS.

1. FAILURE TO RETURN SURVEY TO LAND OFFICE.—While the inchoate right to land acquired by a survey is not lost by failing to return the survey to the land office within the time required by statute, and the holder of the survey may, notwithstanding such failure, still obtain a

Bryant & Co. v. Wood & Co.

grant vesting him with title from the time of its issual, yet this right must be perfected within a reasonable time. It may be lost by long delay.

In this case a delay of thirty-five years after the making of the survey, without obtaining a grant and without any thing to account for the delay, was unreasonable, and deprives the holder of the survey, who has never had possession, of any right to the land, as against one in possession under a patent obtained more than thirty years after the survey was made.

2. ACTION TO STAY WASTE.—Even the equitable owner of land, although not in possession, has the right to maintain an action to stay waste.

3. SAME.—Although an action of ejectment can not be maintained upon a mere equitable right, yet as plaintiff, in this action to stay waste, asserted an equitable ownership in his petition, and defendants, in their answer, not only asserted ownership in themselves with a prayer that their title be quieted, but also asked that appellee be estopped from asserting any claim to the land, it was proper for the court to take control of the question of ownership.

N. A. RICHARDSON FOR APPELLANTS.

1. The petition is defective in that plaintiff fails to allege that he is entitled to the possession of the land he seeks to recover.

The statement of a fact constituting a cause of action or defense can not be avoided by a statement which raises only a *prima facie* presumption of the fact relied on. (Haggan v. Hay, 13 B. M., 176; Gregory v. McFarland, 1 Duv., 62.)

2. In the absence of any explanation in the petition as to why plaintiff has not procured a patent, the presumption is that his survey or warrant was not legal, and that a patent could not be legally issued thereon.

3. Under the act of 1815, which is the law of this case so far as plaintiff's title to the land is concerned, a party for whose benefit a survey is made has no title to the land before patent issues, unless he has his survey registered within one year from its date.

While various statutes have been enacted giving time to perfect claims, and for the filing of plats and certificates with the Register, there is none sufficient to give relief to plaintiff. (Gen. Stats., chap. 109, sec. 3.)

4. A patent is not void, although it embraces land that had been previously entered or surveyed, provided the prior entry or survey had not been registered within the time allowed by law.

5. A mere equity can neither maintain nor bar ejectment. (Griffin v. Davis, 2 Bibb, 417.)

Plaintiff must show title in himself, or he can not recover. (Shutt v. Travis, Sneed, 307; Anderson v. Turner, 3 Marsh, 134.)

Bryant & Co. v. Wood & Co.

In absence of proof of title on either side, a presumption of title in favor of the first possessor may be indulged in. (Fawk v. Darnall, 5 Litt., 317.)

R. D. HILL FOR APPELLEE.

Appellant's patent is void, because it covers land that had been surveyed by appellee prior to the survey upon which it was based. (Gen. Stats., chap. 109, sec. 3; act of 1835, Loughborough's Statutes, p. 386; Act of 1837, Loughborough's Statutes, p. 388; Little, &c., v. Bishop, &c., 9 B. M., 240; Flippin v. Hays, &c., 3 Met., 215.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Jesiah Wood, obtained a warrant from the clerk of the Whitley County Court in 1849 for the survey of six hundred acres of vacant land. The survey was made on March 2, 1853. It does not appear to have ever been returned to the Register of the Land Office, and was never carried into grant by the issual of a patent. With the making of the survey the appellee allowed the matter to rest. He does not appear to have ever had the possession of the land, nor does he account in any way for his failure to obtain a grant to it.

In 1888, or thirty-five years after the making of the survey, he brought this action against the appellants, who, as the appellee avers in his petition, are in possession of the land, and who obtained a patent for it in 1884, to restrain them from committing waste upon it by cutting the timber. He claims to be the equitable owner of it by virtue of his survey.

The appellants claim, first, that their demurrer to the petition should have been sustained, because the petition is insufficient, inasmuch as it does not aver that the appellee is in possession of the land, and asserts only an equitable title to it. It is true an

action of ejectment can not be maintained upon a mere equitable right; but this is not such an action, but one in equity to stay waste; and when it was brought, even the equitable owner of land, although not in possession, had the right to maintain such an action. (Gen. Stats. (ed. 1888), page 1387.)

It is true that the judgment is for the land; but the appellee asserted equitable ownership in his petition, and the appellants, in their answer, not only asserted ownership in themselves, with a prayer that their title be quieted, but also asked that the appellee be estopped from asserting any claim to the land. Under these circumstances the court did not err in taking control of the question of ownership.

This brings us to the second claim of the appellants, which is that the appellee, as against them, has no right or title upon which he can recover. This he must do, if at all, upon the strength of his own right. His warrant appears to have been obtained under the act of the Legislature of February 8, 1835, as amended by the act of February 21, 1837. Under these acts he was required to do what was required of the holder of treasury warrants under which vacant lands had been theretofore surveyed, and it was provided that on the return of the plat and certificate of survey to the Register, he should record them, and issue a grant as under the prior existing law. (Loughborough's Statute Laws of Ky., pages 386–388.)

So far as we have been able to find, the act of February 6, 1815, was in force up to that time relative to the period within which this return should be made. (5 Littell's Laws, page 266.) It

provided that it should be done within one year from the date of the survey, and after remaining in the Register's office for six months a grant should issue. If this were done, the grant related back to the time of the survey, and the title dated from the making of it. The act further provided that if the survey was not returned within the time named it might be returned afterward, and a grant issued; but in such case the patent was effective only from the date when the survey was returned. Various acts were thereafter passed, giving until a time named in them to return the survey; but the statutory rule has always existed, so far as we have been able to find, that unless the survey was returned to the Land Office within the time given, the grant should only relate to the time when such return was, in fact, made.

The Revised Statutes of 1852 required the return to be made within four months from the making of the survey, while our present law fixes the time at six months; and each provides that, if done within the time named, the title granted is to relate back, and take effect as of the date of the survey; but that if returned after the time named, as is allowable, the legal title vests in the grantee only from the issual of the patent. (Rev. Stats., chapter 102; Gen. Stats., chap. 109.)

The party by the survey acquires a claim to the land, or what has been termed by this court "an inchoate title." (Flippin v. Hays, &c., 3 Met., 215.) If he fails to return the survey to the Land Office within the time fixed by the statute, this inchoate right still exists, and may be perfected by grant, vest-

ing him with the legal title from the time of its issual. This certainly does not mean, however, that this inchoate right is to exist forever, regardless of the position of other parties. It can not well be supposed that the Legislature so intended. Take, for instance, the case now presented. The appellee has never carried his survey into grant. It was made thirty-five years ago. He furnishes no reason for this long delay, and doubtless none exists. He has never, so far as the record shows, been in possession of the land; and now, after the State has granted it to others, and they have paid for it, and are in possession of it, and have likely improved it, more or less, he springs up, as if from a Rip Van Winkle sleep, and asserts claim to it. We are aware that section 3, chapter 109, of the General Statutes, provides that "every entry, survey or patent, made or issued under this chapter, shall be void, so far as it embraces lands previously entered, surveyed or patented;" but this certainly does not, by inference even, authorize one who has merely had a survey made of land to lie by for any length of time without carrying it into grant, and then, after others acting in good faith have expended their means for it, and have perhaps improved it, and are in possession of it, to claim it, although more than a quarter of a century has elapsed without further step upon his part, and without ever having been in possession of the land.

Whether you term it an inchoate right or title which he acquires, it is but an equity. The law looks to, and public policy requires, a perfection of it by grant within a reasonable time. The party

may lose the inchoate right by neglect or laches on his part. He may, by long delay, lead the State, and individuals acting in good faith, to believe that he has abandoned it, and all intention of perfecting it by grant. It is, of course, impossible to fix any certain period of time within which this shall be considered as having taken place. Each case must to some extent rest upon its own circumstances; but certainly the unreasonable and long delay which has occurred in this instance, and which is entirely unaccounted for, coupled with the non-possession and a lack of any thing showing a purpose to carry the survey into a grant, authorizes a court of equity to say that the party, by reason of his neglect and laches, shall be deemed to have abandoned his claim, and lost his inchoate right.

The judgment is, therefore, reversed, with directions to dismiss the petition.