## Bevins v. Collinsworth.

(Decided January 5, 1911.)

## Appeal from Pike Circuit Court.

1. Vacant and Unappropriated Lands—Disposal of by County Courts.—Only vacant and unappropriated lands are subject to disposal by the county courts. (Sec. 4702, Ky. St.)

2. Surveying—Succession of Entry—Passing of Title.—By Section 4704, Kentucky Statutes, the surveyor is required to survey the entries in the succession, in the point of time, in which the same are made. Neither the entry nor the survey passes the legal title from the State, but they vest an inchoate right in the entrant upon which subsequent legal title and rights may be erected, as well as withdraws from further appropriation the land so designated.

3. Fraud in Procuring Title—Recovery by State.—It may be conceded that lands once entered or even surveyed or patented may be recovered by the Commonwealth for fraud practiced in their procuration.

4. Action to Recover Land—Strength of Title.—In an action to recover land the plaintiff must recover on the strength of his own title and not on the weakness of his adversary's.

5. Location by Ancestor—Rights of Heirs.—The heirs of one who has died after locating a survey of vacant land may perfect the survey by having a patent to issue, if there be no valid defense by the State.

JAMES M. ROBERSON for appellant.

BUTLER & MOORE for appellee.

Opinion of the Court by Judge O'Rear—Affirming.

On September 2, 1889, there was entered on the surveyor's book in Pike county the following:

"Entered land warrant No. 283 for 50 acres for Thos. Collinsworth on the vacant and unappropriated land of Pike county and located it on the following land on the

Petit Br. of Johns Cr. in between and binding on two surveys one for 50 acres made in the name of Wm. Mills and one for 164 acres in the name of the same party and binding on the land of the heirs of Moses B. Collinsworth, running so as to include the vacant and unappropriated lands in said bounds, binding also on the lands of Penina James.

"JAMES M. STATON, S. P. Co.;
"By WM. M. CONNOLLY, D. S."

It is conceded that prior thereto Thomas Collinsworth had purchased and caused to be issued to him a land warrant (No. 283) from the Pike county court for 50 acres of vacant and unappropriated lands in Pike county. The surveyor of Pike county certified as follows:

"Surveyed on the 7th day of September, 1889, for Thomas Collinsworth twenty-nine (29) acres of the vacant and unappropriated land of Pike county, Kentucky, by virtue of part of a Pike county court land warrant, No. 283 for fifty (50) acres, dated September 2, 1889, which warrant is herewith filed. Said land is situated on the headwaters of the Petit's branch of John's creek, Pike county, Kentucky, and bounded as follows: Beginning at two hickories, two chestnut oaks, and two black oaks," etc., proceeding to describe the boundary by courses, distances, and timber corners.

The survey was not registered in the land office at Frankfort, nor was a patent issued upon it. The remainder of the boundary entered has never been surveyed for Collinsworth, and of course no patent has issued for it to him.

Many years prior to 1889 Thomas Collinsworth had taken a deed for a larger boundary of land, including the territory covered by his entry. He believed that it was all covered by patents owned by his grantor. But discovering in 1889 that this parcel was not so covered he took the steps indicated. He then believed that the survey of twenty-nine acres covered all the vacant lands in the boundary covered by his entry. But it did not. Thereafter he continued to exercise acts of ownership over the entire area covered by his entry, cutting and selling from it a large quantity of saw logs, and clearing and enclosing a small parcel of it. Upon his death, this land, with other lands, was sold to pay his debts, and has been conveyed to appellee, who continued to exercise

similar acts of ownership, and claimed it, listing it for taxation, and doing as any owner would with open woodland forest.

In 1902 appellant, who was then a deputy surveyor of Pike county, surveyed for himself 46 acres upon a land warrant issued to him shortly prior thereto, so as to embrace part of the same land covered by Thomas Collinsworth's prior entry, and the most of that included in his 29 acre patent. Appellant caused his survey to be registered in the land office, and a patent to issue to him for the 46 acres. At the time of his survey he knew that Thomas Collinsworth had caused an entry and a survey to be made in that neighborhood, but then did not investigate to learn precisely where the land was located. His survey was surreptitious, being purposely concealed from appellee, who had become the owner of the Thomas Collinsworth claim.

Appellant then brought this suit against appellee, asserting title, and alleging that appellee was cutting timber and threatening to fence the land embraced in the 46 acre patent. An injunction staying further trespass was obtained.

The circuit court dismissed appellant's petition, and he consequently prosecutes this appeal.

A plat of the territory in dispute is subjoined to show more fully the situation.

Appellant's contention is that Thomas Collinsworth abandoned his entry, as well as his survey, by failing for so long to carry into grant the title he sought to procure. Or, if that be not true as to that surveyed, it is true as to that entered and not surveyed. The opinion in Bryant v. Wood, 90 Ky. 530, is relied on.

For the correct application of the controlling principle of that case a study of the statutes and other decisions construing them is necessary.

The present statute regulating the appropriation of vacant lands (Secs. 4702 to 4705 Ky. Stats.) is substantially the same, on the points here involved, as were the General Statutes, in force when appellee's entry and survey were made, and the same as during the existence of Revised Statutes (1856 to 1873), and the same as was the act of 1835. (Loughborough's Statute Laws of Kentucky, pp. 386-388.)

"Only vacant and unappropriated lands are the subject of disposal by the county courts." (Sec. 4702 Ky. Stats.)

"None but vacant lands shall be subject to appropriation under this chapter. Every entry, survey, or patent made or issued under this chapter, shall be void, so far as it embraces lands previously entered, surveyed or patented." (Sec. 4704, Ibid.)

As to an entry of vacant lands for purposes of appropriation, Sec. 4703 Ky. Stats. provides:

"Any person who wishes to appropriate any vacant and unappropriated lands, may, on application to the county court of the county in which the same lies, and paying therefor such price as the court may allow, not less than five dollars per hundred acres, obtain an order of court authorizing him to enter and survey any number of acres of such land in the county, and not more than 200 acres.

"The party obtaining such order, may, by an entry in the surveyor's book of the county describing the same, appropriate the quantity of land it calls for in one or more parcels, as he may think proper; but no one person shall, under this chapter, enter, survey, or cause to be patented, more than 200 acres of land in any one county."

By Sec. 4704 Ky. Stats., the surveyor is required to survey the entries in the succession in the point of time in which the same are made. We thus see that the proper entry is the preemption of the right of survey. Neither the entry nor the survey passes the legal title from

the State. But they vest an "inchoate right" in the entrant, (Flippin vs. Hays, 3 Metc., 215.) upon which subsequent legal title and rights may be erected, as well as withdraws from further appropriation the land so designated.

It may be conceded that lands once entered, or even surveyed or patented, may be recovered by the Commonwealth, as for fraud practiced in their procuration, or for some irregularity in proceeding that would vitiate it. Instances too numerous are shown where the State might, but has not, taken advantage of some wrong done it to repossess the title and land. If the State has not chosen to do so, it may be because it was deemed that actual settlement and improvement were the main considerations, and that where these have resulted it did not matter so much by what looseness of proceedings it was accomplished; that it were better to leave undisturbed those who through ignorance, or in good faith had invested in the title, than to exact a more scrupulous regard for mere proceedings. But however that may be, the policy of the State seems to have been not to proceed against such entrants; and the courts have steadfastly refused to let others call in question collaterally such irregularities.( Bledsow v. Wells, 4 Bibb., 329; Jennings v. Whittaker, 4 Mon. 51; Marshall v. McDaniel, 12 Bush 381; Atchley v. Latham, 2 Litt. 362; Pearson v. Baker, 4 Dana, 322; Cain v. Flynn, 4 Dana, 501; Ray v. Baker, 1 B. Mon. 368; Sutton v. Menser, 6 B. Mon 438; Taylor v. Fletcher, 7 B Mon. 81; Little v. Bishop, 9 B. Mon. 246; McMillan v. Hutcheson, 4 Bush, 616.)

The system in Kentucky by which public lands east of Tennessee River have been appropriated is open to grave confusion, if not abuse. If two or more enter, survey, or patent the same land, it results in confusion of rights, therefore weakening values and unsettling the stability of titles to lands. Nothing aside from war could be more hurtful to a State. It was therefore that the Commonwealth, which had inherited its system as well as its lands from Virginia, who had already granted hundreds of thousands of acres by such proceedings, early endeavored by legislation to put a stop to further cause of confusion. The statute in its present form, substantially, was enacted early in the last century. Its aim was primarily to prevent confusion of titles. The fiat was inexorable; land once entered or surveyed,

or patented, was by virtue of that fact withdrawn from further entry, survey, or patent. It was not meant to leave it to the judgment of the county surveyor, much less to the junior entrant, to determine whether the preceding acts had been sufficient, and to bring it into dispute by a test between them. That is precisely what was intended to be prevented. It was to remove the possibility of such controversy, and incidentally, to protect the public from mere speculative claim, and the litigious adventurer. It was, therefore, this court in Goosling v. Smith, 90 Ky., at page 159, speaking of that part of section 4704, Ky. Stats., quoted above, said:

"The language quoted precludes necessity of concurrence of entry, survey, and patent by and for one party in order to render void subsequent entry, survey, or patent of the same land for another; but in express terms makes the existence of either sufficient."

The same declaration was adhered to in Kirk v. Williamson, 82 Ky., 161; Davidson v. Combs, 5 Ky. Law Rep. 812; Terry v. Johnson, 16 Ky. Law Rep., 307, 96 Ky. 95. In Gibson v. Board, 102 Ky. 505, the question was again examined, with evident care. Although unwilling to venture upon a reason for certain features of the statute supposed to be inconsistent, the court concluded, "we feel that we should adhere to the previous rulings of the court." Gibson v. Board has been followed by the cases of Miracle v. Arnett, 19 R., 1855; Boreing v. Hurst, 20 Rep., 185; Morgan v. Morgan, 20 Rep., 191; Ohio & B. S. R. R. Co. v. Wooten, 20 Rep., 386; Cornett v. Combs, 21 Rep., 838; and Gray v. Peay, 26 Rep., 990. In Boreing v. Hurst a survey had been made in 1869, but it was not carried into grant until 1894. Another survey was made covering the same land November 12, 1889, which was carried into grant July 14, 1890. The court held the junior survey void under the statute. The case of Gray v. Peay, supra, is very much like the case at bar. Peay, Sr., had entered and surveyed the land in 1873, but failed to get a patent. Nevertheless he took possession, exercising similar acts of ownership to those of Collinsworth in this case. In 1884 Gray surveyed and patented the land. Gray's survey and patent were held void under the statute.

In Aulick v. Colvin, 6 B. Mon., 289, it was held that one entitled to a preemption might maintain an action against one who had subsequently procured a patent to

issue for the land, to cause its conveyance to the former, provided his conduct showed he had not abandoned his preemption, citing Johnson v. Graham, 5 Dana, 542, and Harrison v. Woodruff, 6 Dana, 188. And in Goosling v. Smith, supra, the court observed:

"While, therefore, the party who makes the first entry of land then subject to entry may, if necessary, enforce by judicial proceedings his right to have survey first made, nevertheless, if there has been already either an entry or survey made of the same land by another, his entry, survey and patent are, in the meaning of the statute, to be treated as void."

Now, taking up the case of Bryant v. Wood, supra, relied on by appellant. Wood caused a survey to be made on his warrant in 1853. It was never carried into grant. Nor did he take possession or indicate a purpose to do so. In 1884 a patent issued upon a junior survey in the name of Bryant. In 1888 Wood sued Bryant in equity to restrain him from cutting timber on the land. The court said, inter alia:

"The party by survey acquires a claim to the land, or what has been termed by this court 'an inchoate title.' (Flippin-Hayes, 3 Met., 215.) If he fails to return the survey to the land office within the time fixed by statute, this inchoate right still exists, and may be perfected by grant, vesting him with the legal title from the time of its issual. This certainly does not mean, however, that this inchoate right is to exist forever, regardless of the position of the parties. * * * The appellee never carried his survey into grant. It was made thirty-five years ago. He furnishes no reason for his long delay, and doubtless none exists. He has never, so far as the record shows, been in possession of the land; and now, after the State has granted it to others, and they have paid for it, and are in possession of it; and have likely improved it, more or less, he springs up, as if from a Rip Van Winkle sleep, and asserts claim to it. * * * Whether you term it an inchoate right or title which he acquires, it is but an equity. The law looks to, and public policy requires, a perfection of it by grant within a reasonable time. The party may lose the inchoate right by neglect or laches on his part. He may, by long delay, lead the State, and individuals acting in good faith, to believe he has abandoned it and all intention of perfecting it by grant."

Earlier in the opinion the court asserted that the plaintiff must recover upon the strength of his own right. The court did not say, nor intimate, that Bryant's survey and patent were not void. Goosling v. Smith had been decided April 17, 1890. Bryant v. Wood was decided October 11, 1890. The two cannot be held in conflict. Bryant v. Smith was rested on the doctrine of laches, available in equity to deny a plaintiff, who has a legal right, but who has slept on it so long as to have induced others to suppose it did not exist, the right to recover against one whom he has by his conduct probably misled, and who in good conscience ought not to be disturbed. The situation here is radically different. Bevins was not misled. He knew to the contrary. Collinsworth was in possession of a part of the land entered (exclusive of his survey) and had repeatedly, openly and continuously exercised such acts of proprietorship as indicated a purpose to become owner in every sense. He believed he had actually surveyed the entire vacant area which he had previously entered. His conduct is such, as before remarked, as was shown by the entrant in Gray v. Peay, supra. But, whether Collinsworth had such title as he might have maintained an action at law or in equity upon is beside the present inquiry. He is not suing as plaintiff. Appellant must recover upon strength of his title, regardless of the weakness of his adversaries. The statute and every case examined are to the effect that his survey is void. So is his patent. He is without a standing in this suit.

Collinsworth's heirs may yet perfect their survey by having a patent issue, if there be no valid defense by the State. And as his entry has not been satisfied, nor his warrant exhausted, he may yet have survey and patent for the balance, so far as anything hindering is here disclosed.

The judgment of the circuit court is affirmed.