## York Coal & Coke Company v. Hamilton.

(Decided December 3, 1918.)

### Appeal from Pike Circuit Court.

1. Public Lands—Patents—Title.—The title to vacant land appropriated under a treasury warrant pursuant to chapter 127 of Kentucky Statutes does not vest in the entrant until a patent

is issued by the Commonwealth upon an entry and survey; and the entrant until a patent is issued has only an inchoate right in the land entered and surveyed, which may be abandoned or lost by unreasonable delay in completing the grant.

2. Public Lands—Patents.—Whether or not this inchoate right has been abandoned or lost by unreasonable delay in obtaining a patent upon an entry and survey depends upon the facts and circumstances of each particular case.

3. Public Lands—Patents.—Ordinarily a patent, valid on its face, can not be attacked collaterally, but it may be so attacked if it was issued in contravention of a statute which declares that a patent issued under prohibited circumstances shall be void.

4. Public Lands—Entry—Patents.—Section 4704, Kentucky Statutes, declares that an entry, survey or patent of land which had been previously entered, surveyed or patented shall be void, and where a patent had been issued to the defendant's vendor before the same land was patented by plaintiff's vendor, defendant in a collateral attack could prove the invalidity of plaintiff's patent, although not apparent upon its face.

5. Public Lands—Patents.—It is provided by section 2063 Kentucky Statutes that where a patent is issued to a person who is dead the title to the land shall vest in his heirs, but this means only such title as would have vested in the decedent had he been alive.

6. Public Lands—Patents—Entry—Inchoate Right.—Held that an entry and survey made in 1874 by plaintiff's remote vendor had been abandoned and his inchoate right in the land lost before a patent isued in his name in 1913, more than twenty years after his death, and that the patent thus issued at the instance and for the benefit of plaintiff after obtaining a deed to the land from the decedent's heirs with full knowledge of these facts and that the land had been patented and claimed by another for more than 30 years, was void.

J. J. MOORE for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In this action by appellee to quiet his title to about 16 acres of land situated on the head of Flat fork of Bear fork of Robinson creek in Pike county near the Floyd county line, there is practically no controversy about the facts but numerous interesting questions of law are presented. The facts are these: in 1852 a patent for 200 acres of land was issued to Thomas May, Sr. In 1867, Thomas May, Sr., by deed conveyed to Mary E. May a boundary of land containing about 800 acres and including all of the above 200-acre patent. In 1874,

William Bentley, under a Pike county land warrant, entered and surveyed 50 acres of land entirely within the 800-acre boundary conveyed by Thomas May, Sr., in 1867, to Mary E. May, and overlapping the 200 acres patented in 1852 to Thomas May, Sr. In 1872, Mary E. May moved upon the land conveyed to her by Thomas May, Sr., in 1867, and within the Thomas May, Sr., 200-acre patent of 1852, and she and her heirs continuously thereafter resided upon and had possession of the 200-acre patent and claimed title and possession of the whole of the 800-acre boundary conveyed to her by Thomas May, Sr., in 1867, until 1911 when her heirs by deed conveyed the whole of the 800-acre tract and other lands to the York Coal & Coke Company. The York Coal & Coke Company has continuously since that time been in the actual possession, through its agents and tenants, of certain portions of the land conveyed to it and claiming the possession of the whole, but neither Mary E. May nor the York Coal & Coke Company has had an actual possession of that portion of the Bentley survey which is outside of the Thomas May, Sr., 200-acre patent except for some five or six years, between 1874 and 1887 or 1888, so that it is clear that the appellant and those under whom it claimed title to so much of the Bentley survey as is outside of the Thomas May, Sr., 200-acre patent have not had an *actual* continuous adverse possession of the land in controversy for the statutory period of 15 years. Mary E. May also procured from the Commonwealth a patent for 300 acres on June 8, 1881, and a patent for 17½ acres on April 14, 1904, which patents covered all of the Bentley 50-acre survey which is outside of the 200-acre Thomas May, Sr., patent. So that appellant has a good title to all of the land in controversy unless it is invalidated by the patent issued to William Bentley in 1913 upon his entry and survey made in 1874 under which appellee claims the land in controversy through a deed made to him in 1913, and some months before the patent was issued, by the heirs of William Bentley who had been dead more than 25 years when the patent was issued to him.

Obviously the first question presented is whether or not the patent issued to William Bentley in 1913, more than 20 years after his death, upon an entry and survey made in 1874 is valid, because unless it is plaintiff, claiming under it, has no title that could have been quieted.

Although William Bentley had been dead more than 20 years when in 1913 a patent was issued to him upon the entry and survey made by him in 1874, the title vested in his heirs under section 2063 Kentucky Statues; but of course only such title as would have vested in him had he been alive.

Under section 4704 of our statutes, as frequently construed by this court, the legal title to land vests in the patentee as of date of the survey if carried into grant within six months, but if not so carried into grant the title vests only on the date the patent is issued. See notes to section 4704. From the date of the survey and until a patent is issued thereon, the person making the survey or his assignee has only an inchoate right in the land, Flippin v. Hays, 3 Met. 315, which right must be perfected within a reasonable time, and it may be lost by delay or it may be abandoned. Bryant & Co. v. Wood & Co., 90 Ky. 530; Bryant v. Kentucky Lumber Company, et al., 144 Ky. 755; Mason, Jr. v. Fuson, 171 Ky. 111.

So the question arises, had the inchoate right of William Bentley under his entry and survey of 1874 in the 50 acres of land been abandoned or lost by the delay of 39 years before the patent was issued in his name in 1913, so that he, if living, could not have had the patent issued to him? It was held in the case of Bryant v. Wood, *supra,* that after 35 years the inchoate right resulting from an entry and survey had been lost by unreasonable delay, so the conclusion is unavoidable that the 39 years here was unreasonable unless because of some peculiar circumstances which would explain and excuse such delay, since it was there held, and it is the rule, that whether or not a delay is unreasonable must to some extent rest upon the facts of each case. The circumstances of the instant case not only do not excuse this long delay, but prove an absolute abandonment to the Mays because after making the entry and survey Bentley sold his right in the land by parol to one Jesse Hamilton and moved out of the neighborhood and died within 10 or 12 years without ever having asserted or claimed any further interest in the land, nor did any of his heirs for more than 20 years after his death assert or claim any interest or right therein, until for $20.00 they sold and conveyed the land to appellee in March, 1913, who had full knowledge of all of these facts and besides that the Mays were claiming the land under the Thomas May, Sr., deed of 1867 and the

Mary E. May patents of 1881 and 1904, and that they had paid Jesse Hamilton $50.00 to surrender the land and improvements made by him thereon and that Jesse Hamilton had died without ever again asserting any right or interest therein. So we conclude that the inchoate right of Bentley not only had been lost by delay but had been definitely abandoned more than 25 years before the patent was issued in 1913, and that neither he nor his heirs could have demanded the issuance of the patent under which appellee claims, and that as to the Commonwealth it is, at least, voidable. But as the Commonwealth nevertheless issued the patent and is not complaining, it remains to be decided whether or not appellant in this action could by indirect attack prove the invalidity of the patent which is not void on its face, since a patent valid on its face can not usually be attacked indirectly. There are, however, at least three exceptions recognized to this rule as was pointed out in Miller, et al. v. Breathitt Coal, Iron & Lumber Co., 152 Ky. 390, one of which is when the patent was issued in contravention of a statute which declares that it shall be void if issued under prohibited circumstances.

Section 4704, *supra*, provides that an entry, survey or patent of land which had theretofore been entered, surveyed or patented is void, and as previous patents had been issued to defendant's vendors for the land patented to plaintiff's vendor, it follows that defendant could in this action prove the invalidity of plaintiff's patent, although not apparent upon its face. Under the circumstances as they clearly appear the plaintiff with full knowledge of all the facts is attempting to use a court of equity to quiet his title under a patent based upon an abandoned entry and survey, and obtained by him under circumstances amounting to a fraud upon the rights of the defendant whose vendor in good faith entered, surveyed and patented the land, and after having satisfied every claim and demand made by those who professed to own an earlier entry and survey, had claimed the land with plaintiff's knowledge and with the knowledge and consent of those under whom he claims for more than thirty years, before plaintiff's attempted resuscitation of this long time abandoned inchoate right of William Bentley more than twenty years after his death, which he, if alive, could not have done and doubtless would not have attempted.

The "clean hands" doctrine protects courts of equity from being so used.

Wherefore, the judgment quieting appellee's title to the land in controversy is reversed with directions to dismiss the petition.