## Caddell v. Lovitt et al.

(Decided May 23, 1930.)

(As Modified on Denial of Rehearing December 19, 1930.)

182

STEPHENS & STEELY for appellant.

H. C. GILLIS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing in part and affirming in part.

The appellant, M. C. Caddell, was unsuccessful as plaintiff in the trial court and has appealed.

To understand this case one must know something of its history. In 1849, one Jesiah Wood obtained a warrant for the survey of 600 acres of land, which survey he had made in 1853. He did nothing more and on July 10, 1884, Morgan Bryant, Joseph Gatliff, and Randolph Lovitt, obtained a patent No. 59258 for 200 acres of land, and Morgan Bryant and Randolph Lovitt obtained patent No. 59259 for another 200 acres adjoining patent No. 59258 on the east.

Litigation between Wood and Bryant and Lovitt relative to patent 59259 followed which reached this court, and in Bryant, etc., v. Wood, etc., 90 Ky. 530, 14 S. W. 498, 12 Ky. Law Rep. 454, it was held Wood had abandoned his claim and lost his rights.

By mesne conveyances the rights of these patentees in both these patents have passed to M. C. Caddell.

December 23, 1918, Caddell began the present litigation by suing John E. Lovitt and Joe M. Lovitt (grandsons of Randolph Lovitt) to enjoin the cutting of timber and other trespasses they were making on the lands covered by these patents 59258 and 59259. These Lovitt boys answered asserting they are the equitable owners of the land described in the petition, and asking to have their title quieted.

H. C. Gillis and wife, and J. E. Terry and his wife, whom we shall refer to as "Hill's heirs," filed a petition to be made parties, asserted title in themselves and asked that their petition be taken as their counterclaim against Caddell, and that their title be quieted.

The Lovitt boys and "Hill's heirs" seem to have had some understanding and joined their forces against Caddell. After the case was prepared and heard, the court adjudged that the Lovitt boys and "Hill's heirs" were the owners of the property, without determining their rights between them, and dismissed Caddell's petition.

"Hill's heirs" are claiming under patent No. 52017, issued June 23, 1874, to Alfred L. Clapp, which embraced all of the land described in patents 59258 and 59259.

The claim of the Lovitt boys is based upon a bond for a deed alleged to have been executed on October 28, 1893, by Randolph Lovitt, by which he undertook upon payment to him of $125 to convey to A. J. Lovitt (a son of Randolph Lovitt and the father of the Lovitt boys) a portion of patent 59258 embraced in a certain boundary and containing 100 acres.

As the patent No. 52017 under which "Hill's heirs" are claiming is older than patents 59258 and 59259, under which Caddell is claiming, it follows "Hill's heirs" must prevail unless Caddell can establish for himself title in some other way, or can in some way break down the title of "Hill's heirs."

Caddell sought to establish title in himself by attempting to show he and his grantors had had adverse possession of the land covered by patents 59258 and 59259 for such length of time as to give him title, and by a plea of champerty he sought to break the chain of title connecting "Hill's heirs" with patent 52017.

We shall try to discover just what the evidence means, and to determine the correctness of the judgment in view of these two claims.

### ADVERSE POSSESSION.

Morgan Bryant and Randolph Lovitt were brothers-in-law. They seem to have had some understanding with Gatliff and they traded and trafficked in this land as if Gatliff owned no part of it. In May, 1891, Bryant and Lovitt conveyed one-half of these patents 59258 and 59259 to N. A. Richardson.

They seem to have agreed with Richardson on a partition of it which appears to have been practically this, that Richardson was to have patent 59259 and Bryant and Lovitt then agreed with each other on some sort of a partition of 59258 by which Bryant got the western part of it and Lovitt the eastern part of it.

Lovitt put his son, A. J. Lovitt, upon the eastern part of 59258, and in 1891, A. J. Lovitt built a house upon it wherein he resided with him family until November 14, 1897, when he is supposed to have killed a man, anyway he abandoned his family and left the country.

Bryant put his son-in-law, Harve Thomas, on the western part of 59258, whereon he built a house in 1892, and in which he resided with his family until 1898. Thomas had no color of title then, but on April 10, 1901, the western half of 59258 was conveyed to Thomas and wife by Morgan Bryant, Randolph Lovitt, and their wives.

It is claimed various other parties occupied these houses as tenants after A. J. Lovitt and Harve Thomas moved out, but the proof of their occupancy is so meager and unsatisfactory that it cannot be said that Caddell has acquired title thereby.

Caddell contends that, even though he cannot show title by adverse possession by tacking these various old possessions to his own, he did establish an adverse possession in himself independent of these old possessions for more than 15 years prior to the bringing of this suit. In other words, that he traces his own possession back to and beyond December 23, 1903.

The evidence of Caddell himself does show such possession, but it is shown by six witnesses that in 1912 and 1913 no one was in this Jack Lovitt house or any possession being maintained thereon, and it is shown the possession of the Harve Thomas tract was abandoned years ago.

We have a lurking suspicion that Caddell and those under whom he claims have had such possession here as would give him title, but he has not proven it. As to the possessions on this property in the nineteenth century, we can understand easily how time and death may have prevented his establishing it, but those two should not have prevented his establishing such possession as he had in the twentieth century. He gives the names of his alleged tenants in this period, one of whom was his brother-in-law, yet not one of these does he call to support his claim. Let us now look at what occurred on the trial. At the conclusion of all the evidence each side offered a set of instructions. The first instruction in each set was a peremptory instruction to find for the party offering it. Some courts hold that to be a waiver of submission to the jury. See 38 Cyc. 1582. This court seems to have taken no position on the matter, and it is not necessary for us to do so here, for the record shows the court on its own motion discharged the jury and took the case under advisement and neither party excepted. There was sharp

dispute in the evidence, and the finding of the court on such disputed facts under such circumstances is equivalent to the verdict of a properly instructed jury, and cannot be disturbed unless it is flagrantly or palpably against the evidence and this it is not, so far as the claim of adverse possession is concerned, though we have reached a different conclusion upon the other issue which we shall now discuss.

CHAMPERTY.

In the chain of title connecting "Hill's heirs" with patent 52017 is a deed made March 7, 1896, and now of record in deed book 27 at page 415 in Whitley county records.

On that date A. J. Lovitt was in the adverse possession of the eastern half of 59258 under the title bond mentioned, and Harve Thomas had an adverse possession of some portion of the western half of 59258. A reasonable inquiry by the grantees in this deed of March 7, 1896, would have disclosed the nature and extent of these possessions, and that deed is void as to that.

We find no evidence of any adverse occupation of patent 59259 on March 7, 1896, and the judgment quieting the title of defendants as to that is affirmed, but there was then adverse possessions on patent 59258 and to the extent thereof this deed of May 7, 1896, is champertous and the judgment is erroneous.

A. J. Lovitt's possession was under a contract made him by Randolph Lovitt and containing a boundary sufficiently definite that the premises claimed under it can be easily identified.

Harve Thomas had no color of title, and the evidence does not show the extent of his possession. As to whatever may have been the extent of Harve Thomas' possession then, the court's judgment quieting the title of the defendants thereto was erroneous.

The trial court will hear evidence and determine the extent of the possession Harve Thomas had on May 7, 1896, and as to that and the A. J. Lovitt boundary, the judgment is reversed, and the counterclaim of the defendants is dismissed.

Judgment reversed in part, and affirmed in part.