## J. W. MACKEY V. JOHN B. ARMSTRONG ET AL.

### No. 2759.

1. **Immaterial Error — Archives.**—Under an agreement for the admission in evidence of certified copies of archives of the Government of Mexico, it was error to admit a copy of the written application to the officer at Mexico for said copies. The application was not an archive, but its admission was immaterial, as it could not have had any effect in the decision of the case.

2. **Circumstantial Evidence.** — Documents showing the consideration and purpose of an alleged grant sought to be established by circumstantial evidence, the original being destroyed, are admissible as circumstances to be considered for what they are worth in connection with other evidence produced.

3. **Ancient Instrument.**—An instrument over thirty years old produced from its natural or proper custody is competent evidence, although not recorded or executed after the forms of law for the execution of such instrument at its date.

4. **Ex Parte Affidavits.**—Ex parte affidavits showing the existence and contents of a title shown to be lost are incompetent as evidence. Such affidavits do not become competent by age; that is, they are not *ancient instruments* as the term is used.

5.   **Practice in Supreme Court.**—The trial judge not having placed upon record his findings of fact or conclusions of law, nor in any manner indicated the grounds upon which he based his judgment; the plaintiff having made a case requiring judgment in his favor unless defeated by the testimony by the defendants; and the judgment below being for the defendants, on appeal the satisfactory testimony supporting the judgment having been declared inadmissible, this court will reverse and remand. This court can not know upon what the trial court acted, or that the court below would have found for the defendants upon the testimony not excluded.

APPEAL from Nueces.   Tried below before Hon. J. C. RUSSELL. The opinion states the case.

*Hancock, Shelley & Hancock,* for appellant.—1.   The written application of Hall, made in 1883, to the chief of the general and public archives of the nation, for copies of papers constituting parts of the archives in his charge and custody, and which were made archives in 1802, was improperly attached thereto as an archive, and the ex parte and unsworn statements of said applicant Hall were erroneously admitted as testimony of the matters stated.   The archives themselves were the only proper evidence of what they contained and of the matters to which they related.

2.   The court erred in its ruling as set out in plaintiff's bill of exceptions number 7.   The instruments there offered in evidence by defendants were not admissible in evidence as recorded instruments, because not recorded until after plaintiff's files and locations were made.   The paper to the admission of which objection is made under this assignment purported to be an original power of attorney, executed by one Pedro Balli to one Manuel de la Fuente, on the 13th of March, 1828, empowering the said Fuente to sell, hypothecate, or mortgage twenty-five leagues of land in the jurisdiction of the town of Reynosa, at a place called La Barrita.   This said paper was without any character of authentication or probate until April 4, 1850, when a certificate purporting to be made by the Governor of the State of Tamaulipas was attached thereto, certifying that the signatures with which the "proceedings, documents, is authenticated, are of the persons therein expressed, and that Don Juan Villareal was alcalde of the town Soto la Marina the year 1828."   This paper was inadmissible as an ancient instrument, because it was not shown to have come from the proper custody.   It was inadmissible as a recorded instrument, because it was not authenticated for registration, as required by the statute.   It was irrelevant and incompetent, because there was no evidence of title in Don Pedro Balli, there being no evidence of his occupancy or actual possession of the land, nor was there any competent evidence connecting Don Pedro Balli with any real or pretended grant from the government, as claimed by the defendants.

3.   The court erred in its ruling admitting over plaintiff's objection a paper purporting to be a deed from Don Ramon Cantu y Garza to James H. Durst, of date the 28th day of December, 1852, offered by defendants as an ancient instrument, objected to by plaintiff, because said paper is not a deed executed in accordance with the laws of this State.   When offered as a recorded instrument it was objected to by plaintiff as irrelevant and immaterial, and incompetent to affect plaintiff with notice, the record being subsequent to plaintiff's files and locations.

4.   The ex parte affidavits mentioned [see opinion] are incompetent and inadmissible as testimony as against plaintiff to prove any fact, the same having been made in 1854, and without cross-examination, and for what purpose it does not appear, except as may be inferred from the indorsement made on said papers, viz., "Evidence before Board of Commissioners, in A. D. 1854;" that said affidavits were then procured to be used before the commissioners appointed under the Act of February, 1850, to provide for the investigation of land titles in certain counties therein mentioned.   If they were so used before said board, with whatever other evidence that may have been presented, they were not deemed sufficient by said board to support the claim of title under a grant from the Spanish Government, as now set up by the defendants in this suit, and attempted to be sustained by said affidavits, the same not having been recommended by said board.   Pasch. Dig., arts. 4440, 4461;  Act February 8, 1850;  Act February 10, 1852.

The affidavit of Manuel de la Vina on its face does not present the probability of truth.   He says, that he knows the facts stated by him from the expediente, which at a former epoch the authorities of Reynosa formed in order to measure the exidos of that town, at a time when he held the appointment of secretary, in the years 1830 to 1833, inclusive.   If an expediente or copy was made at the time stated by him the matrix or protocol remained with the archives.   If by expediente he meant the original archive or protocol, it was long subsequent to the grant as claimed by defendants.   He says, that in 1837 there was sent up to the government of the State an expediente, and they forgot to return the original to the place of its origin.   From this it must appear, that the original matrix or protocol was removed from the archives of Reynosa, if a grant was extended to Francisco Balli by the order of the viceroy, under authority of the royal cedula, as claimed by defendants. Reynosa was not the proper depository of it as a government archive. De la Vina further says, that in 1842, he being the first authority of Reynosa, a new expediente was formed upon the same particulars, conjoining to it some other cedulas and resolutions of the government of the viceroy which were formed in testimony, among which was the cession made in favor of Balli of twenty-five leagues of land, for the singular purpose to deduce therefrom the fact that only the lands of Balli were included in the act to give exidos.   What connection the

archives of the grant to Balli by the government of Spain had with the cession by Balli to the government of his land for exidos does not appear. The cession by Balli of exidos (town commons) was independent and anterior in point of time to the date, even of his petition for grace or favor from the government on account of it.

If the grant was made to Balli, as claimed, and the original archive thereof was removed from Reynosa to Victoria in 1842, it was there, remaining there in 1854, when these affidavits were made. If the testimonio, or second original of a grant to Francisco Balli, was in the possession of Pedro Balli, at Soto la Marina, as indicated by his letter to Don Ramon Cantu y Garza (which letter is among the batch of papers presented to the commissioners in 1854), in August, 1834, it was accessible to persons claiming under it, and no effort is made to prove its loss or destruction, or to account for its nonproduction.

The defendants claim to be protected in their title under the last paragraph of article 8 of the treaty of Guadaloupe Hidalgo. We submit, that such protection is assured to Mexicans only holding titles and those claiming under them, which were sustained or in accordance with the laws of Mexico, and the assertion of which may be supported by the rules of procedure and of evidence under the laws of this State. And we submit, that the existence of a grant to Francisco Balli anterior to and at the date of said treaty is not supported by the testimony produced by the defendants in accordance with the laws, rules of procedure, and of evidence in force in the courts of this State.

In 1850 a board of commissioners was appointed, under authority of the act of the Legislature herein above referred to, to investigate all titles and claims to land under the Spanish government, situated in certain counties, among which was Cameron County, in which is the land in controversy. If the grant to Francisco Balli ever existed, it is not pretended that it was lost or destroyed until the destruction of the archives at Victoria by the French in 1864. Up to that time the same was certainly accessible to the parties claiming Balli's title, and could have been obtained and presented to said commission for investigation and recommendation.

Again, in 1860, an opportunity was afforded to claimants to lands situated between the Nueces and the Rio Grande, under Spanish titles, by proceedings in the District Court. Said original title or grant, if it ever existed, was still accessible in the government archives at Victoria as pretended by defendants, and yet no effort is made to obtain an authentic copy thereof, and to have the same recommended for confirmation, or established in either of the modes authorized by the State.

We maintain, that the latter clause of section 2, article 14, of the Constitution, which provides, "When the appropriation is evidenced by the occupation of the owner or some person holding for him," mainly relied on by the defendants, is not materially different or intended in

any way to relieve the parties in possession from the necessity of the same character of testimony which would be requisite to successfully resist claimant under a location, etc., as under the preceding clauses of the same section, as where the previous appropriation is evidenced on the county records or in the General Land Office. The word appropriation must mean land that has been previously granted to the party in possession, or where the possession may be held by some one under him. Then we maintain, that it must follow that the evidence necessary to establish this fact must be of the same character that would be required in any controversy where a party sets up a right under a grant, a deed, or other instrument of writing. Its former existence must be shown, and its contents, and the failure to produce it must be satisfactorily accounted for before the secondary evidence prescribed becomes admissible to establish the facts necessary to be established as above stated.

*Bethel Coopwood,* attorney for appellees John B. Armstrong, Mary J. Durst, James W. Durst, Jesus Garcia Hinojosa, Candelaria Garcia de Hinojosa, and Rafael Garcia Hinojosa.—1. The language of the agreement embraces the certificate of Justino Rubio, which makes the application of Hall part thereof, and this application is also a part of the transcript, showing what documents were asked for, and constituted one of the documents or instruments which related to and treated of the administrative transaction of procuring and issuing the certified transcript of the documents existing in the archive, and properly constituted part of the expediente of such transaction. Practica Forense, vol. 1, sec. 14; Escriche, verbo Expediente.

2. The contents of the archives of a former government may be proved under our law, and the agreement is tantamount to any proof.

3. This power of attorney [see opinion] was more than sixty years old, and made in due form under the law of the land, and constituted a link in the chain of title under Francisco Balli, and was properly in the custody of appellees, who claimed under it, and it was admissible as an ancient instrument to prove authority of Fuentes to make the sale, and to show acts of ownership by Pedro Balli at that date over the twenty-five leagues of land in the jurisdiction of Reynosa, called La Barrita.

4. Ample proof of the grant to Balli and of its locality, boundaries, etc., and of long possession of the land under the grant being shown, it was not necessary for appellees to show title in themselves to defeat plaintiff's locations and claim under them; and possession being shown under Cantu and then under Durst, it was competent to show that Durst claimed under the grant by an instrument to that effect more than thirty years old, coming from proper custody.

5. This deed is sufficient to convey the interest of the grantor to Durst, coupled as it was with delivery to him of possession of the land and of the power from Pedro Balli to Fuente and the deed made by virtue thereof; and being more than thirty years old, it was admissible.

6. The genuineness of these instruments (the affidavits) being admitted, they were the statements of old men, who knew the premises and parties they mentioned, touching the locality and boundaries of the land granted to Balli, admitted to have been made by them in 1853, in such solemn form, and it being shown that they were dead, such statements were admissible to show locality and boundaries of the premises. Hurt v. Evans, 49 Texas, 311; Smith v. Russell, 37 Texas, 247; George v. Thomas, 16 Texas, 92; De Leon's case, 9 Texas, 607; Lewis v. San Antonio, 7 Texas, 301; Stroud v. Springfield, 28 Texas, 649; Welder v. Carroll, 29 Texas, 332; Malone's Real Property Trials, 224–226.

7. These instruments being the best evidence that it was possible to obtain at this late day as to the existence of the testimonio of title and what became of it, when the original letter of Pedro Balli, showing that he had it in 1834, had been admitted without objection, were admissible for such purpose, after all the other testimony, showing possession for eighty-four years, and the action of the junta superior and other royal officers in decreeing the grant had been introduced. Ellsworth v. Ins. Co. (N. Y.), 11 N. E. Rep., 355; Doe v. Aiken, 31 Fed. Rep., 393; Mills v. Herndon, 60 Texas, 357.

8. These papers were declarations of old men of the vicinity in relation to the death of Francisco Balli and the relation of Pedro Balli to him, and were admissible to show such death and relationship. Carter v. Montgomery, 2 Tenn. Ch., 228; Primm v. Stewart, 7 Texas, 181, 182.

*Wells, Stayton & Kleberg,* and *Stanley Welch,* for McCampbell and Kenedy, appellees. — 1. The defendants claimed under a grant the paper evidence of which could not be produced, and secondary evidence was resorted to; under such circumstances it is competent and relevant to introduce copies from public archives tending to show a consideration for the grant, and tending to point out the fact that the grant had been made. 1 Greenl. Ev., secs. 84, 91.

2. The fact of a grant to Francisco Balli was established on the trial by competent evidence; and the land having thus been separated from the public domain, and possession having been shown for years under the grant, and the appellant's agent having actual notice of such grant and possession, the appellees came within the meaning of section 2 of article 14 of the Constitution of the State, and are entitled to its protection.

3. There is sufficient evidence of a grant and occupancy thereunder upon which to base the judgment of the court, without the ex parte affidavits complained of. Const., art. 14, sec. 2; Mills v. Herndon, 60 Texas, 353.

HENRY, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the appellant to recover seventy-six alternate surveys of land in Cameron County, made by virtue of certificates issued to the Gulf, Colorado & Santa Fe Railway Company. The cause was tried by the court without a jury, and a judgment was rendered in favor of the defendants.

The case made by the plaintiff was sufficient to authorize a judgment in his favor, unless it was defeated by the one made by the defendants. The defendants claimed, that they held possession of the land under a grant of twenty-five leagues made by the king of Spain about the beginning of this century to one Francisco Balli, and that the land having once been severed from the public domain, was protected from plaintiff's locations by section 2 of article 14 of the Constitution of this State.

Plaintiff's evidence established that the records of the General Land Office did not show anything concerning the claim of Francisco Balli, nor did the records of Cameron County, but that there were deeds between parties for said lands on record in said county, of which plaintiff had notice before his locations were made.

The defendants introduced evidence tending to show the following facts:

They first introduced the depositions of a number of Mexicans, the purport of which was to prove the existence of the tradition that there was a tract of land known as La Barrita, the name being given to it by a growth of timber on it called barrita; that this tract lay north of a grant of land made to Narciso Cabasas, known as the San Juan de Carricitas, and fronting on the Laguna Madre on the east, and between a grant to one Salinas and another grant on the north, and the Carricitas tract on the south. That a number of Mexicans lived on this tract called Barrita, and kept their stock of cattle and horses on it; some of them as far back as the year 1828, and continued to do so until the year 1836, when they abandoned the country when Santa Anna's army was retreating after the battle of San Jacinto. After the abandonment of the country by those living on this land in 1836, no one occupied or lived on it until in 1848. After that year it was lived on and occupied by various persons, owning and keeping stocks of cattle and horses, continuously. None of them ever saw or knew of any survey being made, but had been told by others about the lines of the Carricitas tract and the Barrita tract being the same, and the northwest corner of the Carricitas and the southwest corner of the Barrita

tracts being the same, and certain lands marking the boundaries of these tracts. None of them ever saw any title papers, or knew anything of any grant of this land by the government to any one, except one or two of them had heard the land spoken of as the Balli grant. One Santos Garcia, 79 years old, said that he knew one Francisco Balli when witness was a small boy, who was then an old man; did not know whether he was the Balli inquired about; that he, witness, went to live with his uncle, George Cabasas, who was the son of Narciso Cabasas, the owner of the Carricitas grant, in the year 1828, and that he heard conversations between his uncle and others about the boundaries of the Carricitas grant; and that there were then people living at different places on the lands lying north of Carricitas, called the Barrita land. Had never seen any paper grant, either of the Carricitas or Barrita.

They then introduced evidence as follows:

1. They proved by the depositions of Pedro Bustamente, Martin de J. Sanchez, and Pablo Levin, residents of the city of Victoria, State of Tamaulipas, Mexico, that the public archives of the State of Tamaulipas were kept at the said city of Victoria, and that in the year 1864 said archives were all destroyed by an armed force of guerrillas under command of Colonel Dupin. By Sanchez, that he was 32 years old; was the chief clerk and secretary of the Governor of Tamaulipas; that he had resided in Victoria for thirteen years; that in 1863, 1864, and 1865 he resided in San Carlos, State of Tamaulipas; that he was, at the time of testifying, custodian of the public archives, and had been in charge of the same during the past thirteen years; that he had many times examined said archives, and had carefully searched through them, and knows that no expediente or proofs of any kind whatever exist therein bearing date anterior to 1867, and was unable to find any expediente or proofs sent up from Reynosa in 1842; that he had fully examined such archives, and no title papers to Francisco Balli exist among them; that the archives are not complete from 1802; there is no document or record of any kind among said archives dating back prior to 1867; that of his own knowledge he did not know the particulars of the destruction of the government archives, but it was well known and authenticated that on or about July, 1864, Colonel Dupin, in command of a mixed force, entered the city of Victoria and destroyed all the public documents and records.

2. Defendants then offered in evidence translations of certified copies taken from the general and public archives of Mexico; first, papers purporting to be a letter to the viceroy of New Spain, relating to the inundation of Reynosa in 1802; second, reply in the royal order of the 14th of January, 1803—item royal cedula of the 16th of January—directing that account be given of the provisions which may have been made on account of such inundation and the results thereof. That the settlement of Lampazos, as well as the town of Reynosa and others,

be re-established in high places, exempt from such dangers; and if that might not be done owing to the formation of the land, directing the construction of protecting dikes.

3.   A paper termed royal cedula, addressed to the viceroy, governor, and captain general of the province of New Spain.

4.   Opinion of the solicitor of the royal exchequer.

5.   Opinion of solicitor of civil affairs.

6.   Sentence of superior junta of the royal exchequer, January 17, 1804.

These papers were followed by the certificate of Justino Rubio, chief of the general and public archives of Mexico.  Preceding these several copies, and attached thereto, was the petition of one Frederick Hall, addressed to the citizen chief of the general archives of the nation, of date September 1, 1883, to which, when offered by defendants, plaintiffs objected, because not embraced in the agreement of counsel, and not admissible as a transcript of a part of the archives of Mexico.

In the opinion of the solicitor of the royal exchequer, the removal of the town of Reynosa to a place called San Antonio, ceded in the major part by military Lieutenant Don Francisco Balli, is mentioned; and that for this cession, and for having aided the citizens very much in the necessities and perils of the inundation, there should be given to him the corresponding graces, as also to other citizens who ceded in like manner their own lands for such removal.  Further, in said opinion it is recited, that it would not greatly affect the exchequer to concede to the military Lieutenant Balli twenty-five leagues of land in the vicinity of the Rio Grande, in the place where it may suit him, out of such as are there found to be unappropriated.

In the opinion of the solicitor of civil affairs, reference is made to the opinion of the solicitor of the exchequer in the following terms: "In this state of the case the said solicitor lays it down, that to said lieutenant there shall be granted and applied twenty-five leagues of land, in the vicinity of the Rio Grande, in the place which may suit him, out of those there found unappropriated, in order to compensate the merit he has acquired, and the cession he made of the major part of the land of San Antonio for the removal of the town of Reynosa, and consequently to the end of perfecting the recompenses which the services of the same Balli have been deemed worthy.  It only remains to determine in relation to the degree of captain, which has been indicated as proper to be conferred upon him, whatever your excellency may deem proper, in the use of your superior faculties, as said minister proposes," etc.

The sentence of the superior junta simply resolved to approve and did approve the grant and application of twenty-five leagues of the public land in the precincts of the Rio Grande to the Lieutenant Don Francisco Balli in recompense of the lands he ceded for the removal

of the town of Reynosa and his services, and in effect to complete such recompense his merit is recommended to his majesty, "in order that he may, it being his sovereign pleasure, concede to him the grace of perpetual justice in the town of Reynosa, as was proposed by the solicitor of civil affairs," etc., dated Mexico, January 21, 1804.

Defendants next, under agreement of counsel as to proof thereof, read in evidence the following papers, purporting to be certified copies from the archives of the town of Reynosa, in the State of Tamaulipas, Mexico, numbered from 1 to 9, inclusive.

1. Expediente formed by the lieutenant of provincial frontier militia, Don Jose Francisco Balli, present judge of the town of our Lady Guadaloupe de Reynosa, addressed to the viceroy of New Spain, representing the condition of the people after the great calamities occasioned by the inundation and the dangerous location of the town of Reynosa because of the frequent recurrence of floods; and representing the superior advantages of the place of San Antonio for the re-establishment of the town of Reynosa; and petitioning for authority to remove said town to the place San Antonio, which, he says, "being my own, in all solemnity of royal order, I cede the same, with the greatest pleasure, and will forego the conveniences which it might afford." This petition purports to have been signed by the reverend father the curate of Reynosa, Friar Augustin Lira, and the captain of militia, Don Juan Jose Balli, Ensign Don Vicente Ynojosa, Sergeant Manuel Gomez, and Don Jose Maria Balli, on the 22d day of October, 1801.

2. Certified copies of two deeds, titles in testimonio of the deed of purchase and sale of a portion of grazing lands granted by Don Francisco Guajardo, in favor of Lieutenant Major Justice de Jose Francisco Balli, and that of the sale by him made of the same land in favor of de Jose Antonio de Leon, "with exception of the league he has ceded for exidos." These deeds are dated February, 1801, and December 14, 1804.

3. Titles in testimonio of deeds of purchase by Balli from Don Antonio Gutierez of land, and by him sold to Don Jose Antonio de Leon, "excepting a league which he ceded for exidos." [The purpose in introducing these deeds was to show the ownership in Balli of the lands described therein, and the recitation contained, that he had ceded lands for exidos.]

4. Testimonio of writing of denouncement of five leagues of pasture land by Don Placidio Benavides.

5. Copy of power of attorney made by Don Pedro Balli to Don Maximo Domingues, authorizing him to collect from Don Manuel de la Fuente the excess of proceeds of twenty-one leagues of grazing lands of La Barrita, dated the 11th day of December, 1834.

6. Copy of a testimonio of deed of sale by Pedro Jose Balli to Doña Guadaloupe Cabazos, dated November 26, 1834.

7.　Copy of protocol of a lease of sheep to Don Francisco Balli by Jose Maria Cantu Guerra, of date the 29th of December, 1806.

8.　Original testimonio of power of attorney of Don Pedro Balli to Don Manuel de la Fuente, to sell, hypothecate, or mortgage twenty-five leagues of land which said Balli possesses in the jurisdiction of the town of Reynosa, at the place called La Barrita, dated the 13th day of March, 1828.

9.　Copy of testimonio of a petition of Lieutenant Major Justice Don Jose Francisco Balli, directed in 1803 to the viceroy, praying grace on account of services rendered to the inhabitants of the ancient town of Reynosa during the inundation.

Defendants also read in evidence original power of attorney, dated the 18th day of December, 1849, from Don Ramon Cantu y Garza to Don Vicente Fonseca.

Defendants also read in evidence a tax deed by the assessor and collector of Cameron County to James H. Durst, dated 29th day of May, 1855.

Defendants also read in evidence original deed from Don Ramon Cantu y Garza to James H. Durst, dated the 25th day of December, 1852, with proof of the signatures of the witnesses thereto, consisting of affidavits made in the town of General Teran, in the State of Nueva Leon, Mexico, on the 13th day of November, 1882, and the affidavit of one Domingo Davilla, made in the town of General Teran, the 13th of November, 1882, that he signed the said deed for the purposes and considerations therein expressed.

Defendants proved, in connection with said last deed from Garza to Durst, by John S. McCampbell, Esq., the custody and possession of the deed by him during the time he was administrator of the estate of James H. Durst.

Defendants then put in evidence, over the objection of plaintiff, a certified copy of field notes of the San Juan de Carricitas grant and map, with the certificates of filing and record of the same in May and June, 1848.

Under the agreement of counsel, that the signatures were true and genuine, and that such instruments were made by the persons and at the time and in the manner therein stated, defendants next read in evidence the ex parte affidavit of Manuel de la Vina, made on the 26th day of July, 1854, before Charles S. Taylor, commissioner, to the effect, that he knew the pasture land La Barrita, which was in the jurisdiction of Reynosa, and is now in the State of Texas, and which to the number of twenty-five leagues was granted to Francisco Balli; and stating the consideration upon which the grant was made, and that he knew these facts, because he had opportunity of learning them from the expediente which at a former epoch the authorities formed in order to measure the exidos of the same town, at a time when he held the

appointment of secretary, from the year 1830 to 1833, inclusive; that in 1837 there was sent up to the government of the State an expediente, and they forgot to return the original to the place of its origin; that in 1842, he being the first authority of Reynosa, a new expediente was formed, upon the same particulars, conjoining to it some other cedulas and resolutions of the government of the viceroy, among which was the cession made in favor of Balli of twenty-five leagues of land, in order to deduce therefrom the fact that only the lands of Balli were included in the act to give exidos, and therefore that they were not to be in cross and squares (that is, not on both sides of the river), stating the possession of Balli in his lifetime, and that the lands were inherited by his son Don Pedro Balli, and giving the history of the transfers.

Also, a paper purporting to be an original letter from Pedro Balli to Don Ramon Cantu y Garza, dated August 27, 1834, in which, answering Garza's letter, he says that he had not had notice of a sale of land referred to therein, made by Manuel de la Fuente, and that he would write to Reynosa to ascertain the facts, that he might determine whether or not to deliver to him the documents of title to said land. Also, the affidavit of Manuel de la Fuente, to the effect that the lands called La Barrita, containing twenty-five sitios, lying in the county of Cameron, State of Texas, near the lands called the San Juan de Carricitas, were granted by the crown of Spain by special decree to Don Francisco Balli, in remuneration for lands taken by the government for the town of Reynosa, Mexico, in the year 1802, or thereabouts, and giving the history of the transfers of the land by inheritance and otherwise down to James H. Durst, on the 28th day of December, 1852. His affidavit purported to have been made on the 13th day of January, 1853. Next, the affidavit of Marcus Gomez and Felipe Prado, made on the same day as the preceding, before M. M. Stephens, chief justice of Hidalgo County, to the effect that they knew the facts stated in the affidavit of Manuel de la Fuente, and that they were true and correct of their knowledge; that Gomez was 65 years of age and Prado 68 at the date of making the affidavit. Also, the affidavit of Jose Ma. Cabazos, that he knew the lands called La Barrita, in Cameron County, granted by the crown of Spain to Don Francisco Balli; that said lands joined the lands called Carricitas, and were bounded on one side by the Laguna Madre; that he always regarded the title a perfect one, like other Spanish grants. Also, affidavit of Marcus Gomez, without date, stating, that in 1801 or 1802 an inundation of the Rio Grande occurred, which destroyed Old Reynosa, and the inhabitants removed to the present site of New Reynosa; that the lands upon which the new town was located belonged to Francisco Balli, who made a donation of the same to the people for a town, in consideration of which the government of the king of Spain granted to him, said Francisco Balli, a tract of land called La Barrita, containing, he thinks, twenty-five leagues; the grantee died, leaving the same

to his heirs; that he does not know to whom they sold.  On said several papers is the following indorsement: "Evidence before Board of Commissioners in A. D. 1854."

Defendants then read in evidence three grants of five leagues each, made by the State of Tamaulipas, and recorded in the records of Nueces County in 1848; the first to Javier Salinas, made in 1831; second to Miguel Ynojosa, upon a denouncement dated September 19, 1831; third to Leonardo Salinas, in June, 1832; for the purpose of showing by these grants that the La Barrita land was recognized as belonging to Padre Don Juan Bantista Cantu, and of defining the boundaries thereof.  Defendants proved by James B. Wells that he knew D. N. Robinson, who was the agent for the location of the certificates under which plaintiff claimed; that at the time witness was the attorney of Damacio Cantu, and that he told Robinson that Cantu had a ranch on the land, and that he held under the same title with the Durst heirs, claiming under a grant to Balli.  This was in 1882, when Robinson came down to make the files of the certificates.

As the judge failed to file his conclusions of law or fact, we are not advised upon what view of the law and evidence he predicated the judgment rendered.

One of the ex parte affidavits read in evidence by the defendants contains the following statement:

"The land called La Barrita, containing twenty-five sitios, and lying now in the State of Texas, and in the county of Cameron, near the lands called the San Juan de Carricitas, were granted by the crown of Spain by special decree to Don Francisco Balli, in remuneration for the lands taken by the government for the town of Reynosa, Mexico, in the year A. D. 1802, or thereabouts; and for many years after said grant the lands were occupied and settled, the owners having large herds of stock, horses, etc., on said land; that Pedro Balli, the sole heir of said Francisco Balli, inherited said lands from his said father about the year A. D. 1814; and thereafter, in the year A. D. 1828, he, the said Pedro Balli, by power of attorney duly executed, authorized and empowered this deponent to sell said lands, and that he by virtue thereof sold and transferred said land to Juan Bantista Cantu, as will appear fully from the act of sale; that thereafter the said Cantu died, leaving his heir at law his brother Ramon Cantu, and that on the 28th day of December, A. D. 1852, he, the said Ramon Cantu, sold, conveyed, and delivered twenty-eight sitios of the said land to James H. Durst, of the county of Starr, for a good and sufficient consideration; that in the year 1834 the titles to said land from the crown of Spain were in existence and in due form of law; that since said time the title papers have disappeared and can not now be found or met with, although frequent and diligent search has been made to find the same; that said lands join the lands called Carricitas in said county, and have been possessed

and owned by the above mentioned owners since the time of the grant, in good faith, and they have always been known and regarded by the government and public as the owners of the land."

The appellant's assignments of error complain of the admission of the following evidence:

1. "The application of one Hall for certified copies of archives of the government of Mexico, at the City of Mexico, called by the defendant the royal cedula, containing the statements of said Hall of the character of said archives, and their legal effect, said paper not being embraced or covered by the agreement under which said certified copies of archives were admitted."

The following is a copy of the paper to which the objection applies:

"*To the Chief of the General Archives of the Nation:* Fedric Hall personally appears before you, and says: It being necessary, in order to corroborate the title to certain real property situated in the county of Cameron, territory formerly belonging to the province of Nuevo Santander, he craves that you issue to him an authentic copy, in legal form, of the letter number 698, directed to the king of Spain, the twenty-seventh day of August, one thousand eight hundred and two, by the Viceroy Marquina; of the royal cedula issued in response thereto, dated sixteenth of June, one thousand eight hundred and three; of the copy of this proper royal cedula, two opinions of solicitors, one of thirty-first of December, one thousand eight hundred and three, and the other twenty-second of December, one thousand eight hundred and three, and the sentence of the superior junto of the royal treasury of the seventeenth of January, one thousand eight hundred and four. I pray you, citizen chief, to provide accordingly, wherein I will receive grace and justice.

"Mexico, September first, one thousand eight hundred and eighty-three.           "FEDRIC HALL."

This petition seems to have been attached to the transcript of the papers mentioned in it by the custodian of the records. The plaintiffs had agreed that the certified copies contained in the transcript might be read in evidence as properly proved copies. Strictly speaking, the application was not admissible evidence, and should not have been considered; but we are unable to see how the plaintiff could have been prejudiced by it, as it is not likely that it was treated by the court as evidence of any fact, but was considered only as formal and introductory of the matters that followed it.

2. The testimonio of the petition to the viceroy for the removal of the town of Reynosa to a new site, because irrelevant.

3. The copies of the deeds from Guajardo Gutierez to Francisco Balli, and deed from Balli to Jose Antonio de Leon.

4.   The testimonio of denouncement of five leagues of grazing land called La Parra by Benavides in 1828.

5.   The original power of attorney from Pedro Balli to Manuel de la Fuente, dated the 13th day of March, 1828, empowering Fuente to sell, hypothecate, or mortgage twenty-five leagues of land in the jurisdiction of the town of Reynosa, at a place called La Barrita.

6.   The deed from Don Ramon Cantu y Garza to James H. Durst, of date the 28th day of December, 1852, offered by defendants as an ancient instrument, and objected to by plaintiffs on the ground that it was not a deed executed according to the laws of this State.

We are of the opinion that the deed to Durst and the power of attorney to Manuel de la Fuente were properly admitted as ancient instruments. We think, too, that the evidence referred to above in the second, third, and fourth objections was properly admitted as circumstances to be considered for what they were worth in connection with the other evidence produced by the defendants.

By the remaining assignments, it is contended that the court erred in the following respects:   1. In admitting and giving effect to the affidavits of Manuel de la Fuente and others.   2. In rendering a judgment in favor of the defendants upon the facts.

The affidavits read as evidence clearly establish a complete title in the defendants, and if they had been properly admitted no other judgment than one for the defendants could have been properly rendered. The affidavits were palpably inadmissible. We are unable to determine that the judgment rendered was not predicated entirely upon them. They must be entirely excluded from our consideration. When that is done, there is nothing in the record to show us that we may not be trying the case upon a state of facts not considered by the judge of the District Court sufficient to sustain the judgment of that court. Whatever weight may be properly attached to it, it can not be said that the evidence that was properly admitted for the defendants is as conclusive in their favor as would be that which should have been rejected.

Under such circumstances, we think that we should, instead of reversing and rendering judgment ourselves, reverse it and remand the cause, in order that it may be tried in the District Court upon such evidence as may be properly considered, and it is so ordered.

*Reversed and remanded.*

Delivered March 25, 1892.

CHIEF JUSTICE STAYTON did not sit in this case.