## Lancaster, Jr. v. Cambron.

(Decided April 15, 1914.)

### Appeal from Daviess Circuit Court.

1 . Vendor and Purchaser—Contract of Sale—Finding of Trial Court —Evidence.—Where in an action by a vendor against a purchaser to recover the purchase price of certain land sold, the purchaser pleaded the abandonment of the original contract of sale, and relied on a specific agreement by the vendor to accept a less sum, evidence examined and held to sustain the finding of the trial court that there was no subsequent agreement to accept less than the original contract price.

2. Fraudulent Conveyances—Rights of Grantor.—Equity will not decree a restoration of property conveyed by the grantor for the fraudulent purpose of defeating a creditor.

3. Fraudulent Conveyances—Rights of Subsequent Vendee.—Where the contract of sale has been executed and the purchaser has acquired title, and the transaction is free from fraud, the purchaser

cannot refuse payment of the purchase price merely because, several years before, his vendor had conveyed the property to his nephew for the fraudulent purpose of defeating his creditors.

4. Pleading—Counterclaim—Set-off—Answer—Insufficiency of Allegations—Civil Code, Sec. 97, Sub-sec. 4.—Although an answer does not contain the words "answer and counterclaim" or "answer and set-off," yet if the facts alleged are sufficient to constitute an answer and counterclaim or an answer and set-off, and plaintiff joins issue thereon, this will constitute a waiver of his right to object to the pleading because of its failure to contain the words "answer and counterclaim" or "answer and set-off."

5. Pleading—Counterclaim—Set-off—Answer—Insufficiency of Allegations—Proof—Judgment.—Where in an action to recover the purchase price of land the answer does not contain the words "answer and counterclaim," or "answer and set-off," and the facts alleged do not constitute an answer and counterclaim or an answer and set-off or a plea of payment, and the proof does not show payment or a valid set-off or counterclaim, it was error to abate the purchase price by certain sums representing damages to the land by the grantor's tenant and rent which the grantor was to receive.

LA VEGA CLEMENTS and LITTLE & SLACK for appellant.

C. M. FINN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on Original Appeal and Reversing on Cross Appeal.

Lena Lancaster Cambron, wife of D. C. Cambron, acquired title to 91 acres of land lying in Daviess County, Kentucky, in the year 1892. She died prior to the enactment of the Weissinger Act in 1894, leaving surviving her, her husband, D. C. Cambron, and an infant son Thomas Cambron. The title to the land vested in the infant son, Thomas Cambron, subject to the life estate of D. C. Cambron. Thomas Cambron died in the year 1894, and left surviving him as his only heir at law his maternal grandmother, Mary Lancaster. Mary Lancaster died and left surviving her as her only heirs at law J. R. Lancaster, Jr., Miles Lancaster, Addie Mattingly, Susan Gough, Lillie Elder, Susan Lancaster, James Lancaster, Eva Mulligan, Martin Lancaster and Charles Lancaster, who became the owners of the 91 acres of land subject to the life estate of D. C. Cambron.

On August 25, 1905, D. C. Cambron conveyed to his nephew, Leslie Cambron, his life estate in the 91 acres of land by deed recorded in the Daviess County Clerk's office in Deed Book No. 79 at page 416. Some time in

the spring of 1910, J. R. Lancaster, Jr., through his brother, Miles Lancaster, began negotiations with D. C. Cambron for the purchase of the later's life estate. D. C. Cambron offered to take $2,500 for his interest in the land. On November 26, 1910, J. R. Lancaster, Jr., wrote a letter to D. C. Cambron, accepting the offer theretofore made, and agreeing to pay him $1,500 on January 1, 1911, and $1,000 on January 1, 1912. In this letter reference was made to the fact that the legal title was in Leslie Cambron, and that Leslie wanted $50 for his interest. A few days later Miles Lancaster went to Leslie Cambron and represented to him that J. R. Lancaster, Jr., had purchased from D. C. Cambron the latter's life estate, and had agreed with D. C. Cambron on the purchase price to be paid. Thereupon Leslie Cambron and wife executed, acknowledged and delivered to J. R. Lancaster, Jr., a deed conveying the land in controversy. The deed was dated December 7, 1910, and was thereafter recorded in the County Clerk's office of Daviess County.

On December 5, 1912, plaintiff, D. C. Cambron brought this action against J. R. Lancaster, Jr., to recover the agreed consideration. Lancaster defended on the ground that plaintiff had conveyed his life interest to Leslie Cambron for the fraudulent purpose of cheating, hindering and delaying his creditors, and that at the time he made the purchase from plaintiff, plaintiff had no right title or interest in or to the land, and therefore nothing to sell or convey. As another ground of defense, Lancaster also pleaded that the contemplated purchase by him from plaintiff was in fact abandoned, and that during the summer of 1911, plaintiff agreed to take $1,500 for his interest in the land. It was also pleaded that the consideration for this latter agreement was the fact that between the date when plaintiff's original proposition of sale was accepted, and the date of the subsequent sale, plaintiff had collected the rent of $350 a year due on the premises, and that during that time the premises had been badly damaged by plaintiff's tenant. The allegations of the answer were denied by reply. The case was tried by the court without the intervention of a jury.

The court found as a matter of fact that D. C. Cambron owned a life estate in the 91 acres of land, and that the land was worth about $7,000. He also found that defendant purchased plaintiff's life estate on November 26, 1910, for the sum of $2,500, of which $1,500 was to be paid January 1, 1911, and $1,000 of which was to be

paid January 1, 1912. He also found that Leslie Cambron held the legal title to the land, and conveyed that title to the defendant on December 7, 1910. He also made the following findings of fact: When the land was conveyed to the defendant it was occupied by a tenant of the plaintiff under a five year lease, which was to expire January 1, 1912. There was no agreement between the plaintiff and the defendant concerning the rent contract. The tenant was to pay for the farm for the year 1911, $300. Plaintiff did not reserve to himself the rent for 1911. The defendant had paid, or would be compelled to pay, to Leslie Cambron the sum of $50. The land was damaged in the sum of $50. The deed made by plaintiff to his nephew, Leslie Cambron, was made for the fradulent purpose of preventing the creditors of plaintiff from subjecting his interest in the land to the payment of their debts.

From the foregoing findings of fact the court concluded that the purchase price should be abated to the extent of $400. Plaintiff was thereupon given judgment for $1,100, with interest from January 1, 1911, and for $1,000, with interest from January 1, 1912. Defendant appeals, and plaintiff prosecutes a cross appeal.

1. It is first insisted that the trial court erred in its findings as to the time and terms of the sale. Defendant did introduce some evidence tending to show that his first offer to plaintiff was predicated on his being able to sell the land to other parties, and having failed in this attempt, the sale was abandoned. Thereafter he wrote to plaintiff and plaintiff agreed to accept $1,500 for his interest in the land. As a matter if fact, however, the offer of November 26, 1910, was accepted. The trade was consummated by the deed of December 7, 1910. On May 8, 1911, defendant sold the farm to I. C. Winstead. Plaintiff denies that there was any subsequent agreement to accept $1,500. It is by no means probable that after the terms had been agreed on and the deed executed, and a re-sale made by defendant, plaintiff agreed to an abatement of the purchase price. We therefore conclude that the evidence on this question fully supports the finding of the trial court.

2. The trial court found, and the evidence conclusively shows, that in the year 1905 plaintiff, who was then in litigation with his second wife, conveyed his interest in the property in question to his nephew, Leslie Cambron, for the purpose of defeating his wife's claim

for alimony.  Defendant insists that as the property was conveyed by plaintiff to Leslie Cambron for the fraudulent purpose of defeating his creditors, plaintiff had no title at the time of the contract of sale, or the execution of the deed, and that, therefore, equity will not aid plaintiff in any way in an effort to make the fraud result to his own benefit.  Jones v. Jenkins, 83 Ky., 396.  True, we have held in a number of cases that where a debtor conveys property in secret trust for the fraudulent purpose of defeating his creditors, courts will not decree a restoration of the property, but will leave the grantor exactly where he has placed himself;  Carson, &c.  v. Beliles, 121 Ky., 294; 1 L. R. A. (n. s.), 1007; Langford v. Langford, 117 S. W., 962; Coleman v. Coleman, 147 Ky., 383; Shamo v. Benjamin's Admr., et al., 155 Ky., 373; yet that principle has no application to the facts of this case. This is not a contest between plaintiff and his grantee, or between the plaintiff and his creditors. Plaintiff's nephew did not decline to restore the property, or to make the deed.  Had he done so, equity would have refused plaintiff any relief so far as his nephew or creditors were concerned.  For the purpose of carrying out the contract between plaintiff and defendant, the nephew voluntarily made the deed direct to defendant.  The effect is the same as if he had first conveyed to plaintiff, and plaintiff had then conveyed to defendant.  The transaction between plaintiff and defendant is not tainted by fraud.  The contract of sale having been executed, and defendant having acquired title, and this particular transaction being free from fraud, defendant cannot refuse payment of the purchase price merely because several years before plaintiff had conveyed the property to his nephew  for  the fraudulent purpose of defeating his creditors.

3.  By cross appeal, plaintiff questions that part of the judgment giving defendant credit for the sum of $400.  Sub-section 4, Section 97, Civil Code, provides:

"A defendant shall not have judgment upon a set-off or counterclaim, unless the caption of the answer contain the words, answer and set-off, or the words, answer and counterclaim; but a misdescription in the caption, of the nature of the defendant's claim, shall not prevent him from having judgment; nor shall a plaintiff have judgment upon a counterclaim unless the caption of his reply contain the words, reply and counterclaim."

In construing this section it has been held that though the answer does not contain the words  answer  and

counterclaim or answer and set-off, yet if the facts alleged are sufficient to constitute an answer and counterclaim or an answer and set-off, and plaintiff joins issue thereon, this will constitute a waiver of his right to object to the pleading, because of its failure to contain the words answer and counterclaim, or answer and set-off. Cason v. Cason, 79 Ky., 558; Nutter v. Johnson, 80 Ky., 426; Lacy v. Lacy, 95 Ky., 110.

In the present case the answer does not contain the words answer and counterclaim or the words answer and set-off, nor does it allege any facts sufficient to constitute a counterclaim or set-off. It does not ask judgment over. It simply alleges the abandonment of the sale made by plaintiff to defendant in November, 1910, and consummated by the deed of December, 1910, and the subsequent agreement by plaintiff to accept the sum of $1,500 for his interest in the land. The fact that plaintiff was to collect the $350 rent for the year 1911, and the further fact that the premises had been badly injured by plaintiff's tenant, constituted it is alleged, the consideration for the subsequent agreement. Moreover, there was no proof on the question of damages, and no proof on the question of who was to receive the rent except that given by plaintiff to the effect that he told defendant's agent that possession of the land could not be given until January 1, 1912. There being no plea of payment, and no sufficient pleading or proof either of a counterclaim or set-off, we conclude that the trial court erred in allowing a reduction of $400 from the purchase price.

Judgment affirmed on original appeal and reversed on cross appeal with directions to enter judgment in conformity with this opinion.