## Cooper, et al. v. Williamson, et al.

(Decided March 11, 1921.)

### Appeal from Pike Circuit Court.

1. Judicial Sales—Conveyance by Commissioner.—Under Civil Code, sec. 398, the conveyance by a commissioner will not pass any right until it has been examined and approved by the court, which approval shall be endorsed on the deed and recorded with it, but failure of the judge to so endorse his approval on the deed will not invalidate it, nor deprive it of its recordable character if there is an order in the action reciting that it has been so examined and approved by the court.

2. Pleading—Specific Relief.—Under Civil Code, sec. 90, the petition may contain a prayer for specific relief, and where defense is made plaintiff may have judgment for other relief under a prayer therefor.

3. Quieting Title—Possession.—In an action to quiet title to land proof of actual possession is not necessary to authorize the court to adjudge the superiority of title, where defendant denies the title asserted by plaintiff and by way of counterclaim seeks affirmative relief.

4. Set Off and Counterclaim—Caption.—Under sec. 97, subsec. 4 of the Civil Code defendant may not have a judgment upon a counterclaim unless the answer is so captioned, but plaintiff's right to object to a pleading for this failure is waived by replying thereto and joining issue thereon in those instances where the facts alleged are sufficient to constitute an answer a counterclaim.

5. Set Off and Counterclaim—Caption.—A pleading captioned as an answer in which defendant asserts his title to land, his actual possession thereof, and plaintiff's want of title and asks that he be adjudged its owner, being to all intents and purposes as well as in its essential allegations a counterclaim, will be so treated by the court.

6. Evidence—Documents.—A document is admissible in evidence without direct proof of its execution if it appears to be of the age of at least thirty years, is found in the proper custody, is unblemished by alterations, and otherwise free from suspicion.

7. Evidence—Documents.—A document purporting to be a title bond and having the appearance of being more than thirty years old can not be admitted as an ancient document where the entire instrument, including the signatures of the witnesses, appears to be in the same handwriting, the misspelling in the document being reflected in the name of the witnesses, and where there is further proof by a witness for the party relying upon the title bond that the document was written at a date much later than the one it bears.

R. H. COOPER, STRATTON & STEPHENSON, ROSCOE VANOVER and C. M. WHITT for appellants.

J. J. MOORE and S. D. STOKES for appellees.

Opinion of the Court by Judge Quin—Affirming.

The superiority of title to a tract of sixty-three acres of land is the single issue presented by this appeal. Both sides to this controversy claim under a patent from the Commonwealth to Henry Smith, dated July 8, 1850, but here their respective claims diverge.

Appellees' title. After patentee's death suit was filed by his administrator for a settlement of his estate; in this suit the property involved was sold by the master commissioner under order of court and Benjamin Williamson became the purchaser. The commissioner's deed dated October 9, 1854, was recorded September 12, 1857. By his will dated April 21, 1877, and probated in February, 1879, this land was devised by testator, (Benjamin Williamson), to his grandson, Kenna Williamson. The latter died intestate and the land passed under the statute to his father (Benjamin Williamson, Jr.) and mother (Parlee Williamson). The father died leaving as his survivors his wife and several children, all of whom as plaintiffs below are appellees here.

Appellants' title. The chain of title relied upon by appellants consists of several links, starting with a title bond purporting to have been executed by Henry Smith to T. J. Owens, February 12, 1850, for the recited consideration of one rifle gun, and then by successive assignments to appellant. Of the three assignments but two appear on the original paper which is in the record. In addition to the foregoing appellant relies (a) upon an agreement between J. E. Goosling (one of the intermediate title bond holders) to the Cooper Coal & Iron Company; (b) commissioner's deed dated September 28, 1918, in suit instituted by appellants against the heirs of Henry Smith; (c) deed dated October 28, 1886, and recorded October 6, 1914, from T. J. Owens and wife to John Goosling (another title bond holder), and his son J. E. Goosling; and (d) deed dated January 23, 1917 from J. E. Goosling and wife to appellant R. H. Cooper.

We will take up the different points discussed by counsel without regard to the order in which they are presented, or by whom made and thus through the process of elimination reach the question at issue, viz., which side exhibits the better title.

1. Invalidity of the deed from Jackson commissioner to Benjamin Williamson. This deed fails to show

it was examined and approved by the court, as required by Civil Code, sec. 398, which provides:

"A conveyance by a commissioner shall not pass any right until it has been examined and approved by the court—which approval shall be endorsed on the conveyance, and recorded with it."

In Helton v. Belcher, 114 Ky. 172, 70 S. W. 295, it was held this Code provision must be followed, but the failure of the judge to endorse his approval on the deed, as is the case here, does not invalidate the deed nor deprive it of its recordable character, where as here there is an order in the action reciting that it has been examined and approved by the court. In such cases a copy of the deed, together with a copy of the order showing the deed was produced in court and acknowledged by the commissioner, and was examined and approved by the court, is sufficient to make out a *prima facie* case of the regularity of the deed and to authorize its introduction as evidence of title. Kentucky Coal Lands Co. v. Smith, 149 Ky. 794, 149 S. W. 979.

2. Does the relief granted exceed that asked in or authorized by the pleadings? The prayer of the petition as amended was that the deeds of October 26, 1886, from Owens to Goosling and the one from Goosling to appellant be cancelled, that appellees be restored to their title, that certain named persons be enjoined from trespassing on the property and for all general and special relief.

In adjudging appellees to be the owners of the land, quieting them in their title, cancelling the title bond from Smith to Owens and dismissing appellants' counterclaim, it is claimed the court exceeded the relief asked for.

Excluding, for the present, the question of the answer being treated as a counterclaim, we think the court was authorized under the pleadings to grant the relief which it did. The effect of a judgment decreeing appellees to be the owners of the land and quieting them in their title, would be to cancel the title bond. Under Civil Code, sec. 90, the petition may contain a prayer for specific relief and for any other relief to which plaintiff may appear to be entitled. If no defense is made plaintiff can not have judgment for any relief not specifically demanded, but if defense is made he may have judgment for other relief under a prayer therefor. The court did no more than it was authorized to do and the objection to the judgment for this reason can not be sustained.

3. Appellees' failure to prove actual possession and their consequent inability to maintain this action.

It is conceded that in order to maintain an action of *quia timet* the plaintiff must have both title and possession. Ky. Stats., sec. 11; Cumberland Co. v. Kelly, 156 Ky. 397, 160 S. W. 1077.

But though the action be to quiet title to land proof of actual possession is not necessary to authorize the court to adjudge the superiority of title where defendant denies the title asserted by plaintiff and by way of counterclaim asks to be adjudged the owner of the land. Where affirmative relief is sought against plaintiff the court will consider all the evidence and pass upon the question of superiority of title. Childers v. York, 187 Ky. 332, 218 S. W. 1027; Herr, etc., v. Martin, 90 Ky. 377, 14 S. W. 356.

This raises a question as to the exact nature of appellants' pleading. In the record it is indexed as the "answer and counterclaim of Cooper," it is copied as the "answer and claim" of R. H. Cooper, the judgment dismisses the "counterclaim." The reply is to the "answer of Cooper." The original is before us, as drafted in typewriting; it was styled "Answer of R. H. Cooper." Though now almost completely erased, it appears some one had interlined "& claim" after the word answer, for the apparent purpose of making it an answer and counterclaim. Just when or by whom the interlineation and erasure were made we are not advised. While Civil Code, sec. 97, subsec. 4, provides that a defendant may not have a judgment upon a counterclaim, unless the answer is so captioned, plaintiff's right to object to a pleading for this failure is waived by replying thereto and joining issue thereon in those instances where the facts alleged are sufficient to constitute an answer a counterclaim. Lancaster, Jr. v. Cambron, 158 Ky. 396, 165 S. W. 416; Cherry v. Cherry, 162 Ky. 245; 172 S. W. 505.

The answer affirmatively pleads that appellant is the owner of and in the actual possession of the land, that "defendants" (plaintiffs) have no right, title or interest in same, that their claim is casting a cloud upon defendant's title and the prayer of the answer seeks a dismissal of the petition and that defendant be adjudged the owner of the land, etc. Under the circumstances the answer being to all intents and purposes as well as in its essential allegations, a counterclaim, appellants will

not be heard to complain that the court erred in so treating it.

Having asserted his title to the land, his actual possession thereof, plaintiffs' want of title thereto and the prayer that appellants be adjudged its owner, appellants can not complain if the court did the very thing they requested, viz., decide the ownership of and to the property in suit. Bryant & Co. v. Wood & Co., 90 Ky. 530, 14 S. W. 498; Hall v. Hall, et al., 149 Ky. 817, 149 S. W. 1128.

4. The superior title. The property has never been improved by fences or otherwise and neither side has shown title by possession. Though the patent was not issued until July 8, 1850, almost five months after the date of the title bond from Smith to Owens, it was surveyed September 11, 1849. Since the entry, survey, plat and certificate of survey vest an equitable title to the holder of the survey, his interest therein is subject to sale or assignment, and the execution of the title bond before the patent was issued does not render the former invalid. Appellees have exhibited what appears to be a complete chain of title from the Commonwealth; unless, therefore, we can find some defect in this chain or some superior equity in appellants' favor the judgment must stand. Appellees insist the title bond from Smith to Owens is a forgery.

The general rule on the admissibility of ancient documents is thus stated in 22 C. J. 945:

"The 'ancient document' rule is that a document is admissible in evidence without direct proof of its execution, if it appears to be of the age of at least thirty years, is found in the proper custody, and is unblemished by alterations, and otherwise free from suspicion, it being said that under such circumstances the instrument proves itself."

This text is approved in James, et al. v. Davis, et al., 172 Ky. 381, 189 S. W. 440, and Everidge v. Martin, 164 Ky. 497, 175 S. W. 1004. See also Harlan, etc., v. Howard, etc., 79 Ky. 373.

There is every indication the alleged title bond is over thirty years of age and it is free of alterations. While we are not prepared to say it is produced by those whose custody affords a reasonable presumption of its genuineness we are clearly of the opinion it is not free from suspicion. It is signed by mark. Certain original papers were tendered in evidence, but the lower court declined

to allow them to be filed. They purported to be in the handwriting of H. Smith, but are not properly identified. There is nothing to show they were written by the Smith who is supposed to have executed the title bond. The title bond, including the signatures of the witnesses, has the appearance of having been written by one person. The spelling is bad. The names of the two witnesses appear as Ali Smith and Robbert Callahan; thus the misspelling is carried into the names. There are many perhaps who can not correctly spell their own names, but we mention this as a circumstance casting suspicion on this writing. The name of the first witness appears on the certificate of survey as "Aly Smith."

The rule as to ancient documents is adopted for common convenience and is founded upon the difficulty of proving the due execution of a writing after an interval of many years. However, the fact that a writing is to be treated as an ancient document does not affect its admissibility in evidence further than to dispense with proof of its genuineness where it is otherwise admissible. 22 C. J. 946.

Where the circumstances pertaining to the due execution and authenticity of the document do not meet the requirement of the rule, *supra,* further proof of its genuineness must be adduced. Not only is there an entire absence of such proof in the present record but on the contrary the deposition of John H. Goosling, introduced as a witness for appellants, throws further doubt on the validity of the title bond. John H. Goosling is the son of John Goosling, Sr., to whom it is said T. J. Owens assigned the title bond in 1882. This witness says that about thirty-five years before he gave his deposition he and his father made a trip to Catlettsburg in a push boat. On the way they met Owens near Louisa; Owens told his father he had been owing him $30 or $40 ever since the war and he offered to give to the senior Goosling the Smith land to square off the debt. His father having agreed to the bargain witness says Owens then and there wrote the title bond. He saw him write it, after which, to use his expression, he (Owens) "reached it" to the senior Goosling. There is but one document filed; if executed in 1850, it could not have been written in about 1880.

The proof as to the due execution and genuineness of the title bond is not sufficient to offset the clear record

title exhibited by appellees. There is testimony that at different times lumber was cut from this tract of land with the consent and approval of both litigants. A witness for appellees, who lived a short distance from the land, testifies that he looked after it for the Williamsons and listed it for taxes in their name, and he never knew of any one having the land in possession other than the Williamsons.

The whole case considered we are satisfied the chancellor had ample grounds justifying his conclusions. Finding no error in the judgment same will be and is accordingly affirmed.