## LANE v. KITTREL et al.

No. 5479.

Court of Civil Appeals of Texas. Amarillo.

Nov. 2, 1942.

Rehearing Denied Dec. 14, 1942.

764

Clayton & Bralley, of Amarillo, and Sam J. Hamilton, of Memphis, for appellant.

Mahan & Broughton, of Childress, and J. O. Fitzjarrald, of Memphis, for appellees.

STOKES, Justice.

This suit was instituted by appellee, Beryl Kittrel, and fourteen others, collateral heirs at law of J. M. Lane, deceased, against appellant, Donna C. Lane, his surviving wife, for partition of 320 acres of land located in Hall County. The land belonged to J. M. Lane before his marriage and was therefore his separate property. He was married only once and no children were born to the marriage. Under the provisions of Section 2, Article 2571, Vernon's Ann.Civ.Stat., appellant was entitled to cne half of the land, which was admitted by appellees, and appellees, being all of the heirs of J. M. Lane, deceased, were entitled to the other half.

Appellant answered the petition by a general denial and set up a cross action against appellees in which she alleged that the community estate of herself and her deceased husband, J. M. Lane, had advanced to J. M. Lane for the benefit of his separate property the total sum of $5,188.80, consisting of money used by him to pay taxes on the land from 1910 to 1939, inclusive, interest on original purchase money due the State of Texas on the land each year from 1912 to 1929, inclusive, the sum of $486 advanced in 1929, to discharge the balance of the original purchase money due the State of Texas, and money expended in the erection of two windmills which appellant alleged were erected on the land and the expenses thereof paid by the community estate during the coverture. She prayed that the same be charged against the separate estate and that it be paid to her out of the proceeds of the sale of the land, or, if the land be found susceptible of partition in kind, that she be secured in the repayment thereof as an equitable charge against that portion decreed to appellees.

A jury was impaneled to try the case but at the close of the testimony, upon motion of appellees, the court instructed the jury to return a verdict in their favor, which was done, and judgment was entered, partitioning the land as prayed for by the appellees, and against the appellant on her cross action.

It was stipulated by the parties at the trial that the land was the separate property of J. M. Lane; that he died in 1940, and no administration was had upon his estate and none was necessary; that appellant was his surviving wife and as such was entitled to one half of the land in controversy; that appellant and J. M. Lane were married June 21, 1910; that the taxes for the years 1912 to 1939, inclusive, as well as the interest on the balance of the original purchase price from 1910 to 1929, and the balance of the principal purchase money were paid during the coverture. The stipulation provided, however, that it did not bind any of the parties as to the funds nor the manner by which they were paid nor by whom the payments were made.

■ The contention of appellant being that during the coverture of herself and her deceased husband the community estate advanced to him the funds for which she sued in her cross action, to be used in discharging obligations against his separate estate, and having based her cross action upon those allegations, the burden of establishing her contentions and allegations rested upon appellant. King v. King, Tex.Civ. App., 218 S.W. 1093; Rolater v. Rolater, Tex.Civ.App., 198 S.W. 391. In an effort to discharge this burden, appellant intro-

duced a bank statement, showing that on May 28, 1910, a short time before their marriage, J. M. Lane had a balance of $759.66 in the Hall County National Bank. As a circumstance supporting her allegations, she then undertook to show that on July 28, 1910, August 29, 1910, and October 29, 1910, which was subsequent to their marriage, her husband's account in the Hall County National Bank was gradually reduced so that on the date last mentioned his balance amounted only to the sum of $109.-23, which she contends would have shown that after their marriage her husband did not have the money with which to discharge the taxes and interest paid during the years of the coverture. As evidence of this contention, she offered what purported to be three statements of J. M. Lane's account issued by the bank and bearing the dates above mentioned. Appellees' objections to the statements were sustained by the court and such action constitutes the principal question presented by the appeal.

█ Appellant contends, first, that a proper predicate was laid for the introduction of the bank statements, and, secondly, that they were admissible as ancient documents. In our opinion, neither of these contentions can be sustained. The predicate attempted to be laid by appellant for the introduction of the statements consisted of her own testimony and that of Charles Drake. Appellant testified that the documents were statements of the bank account of her deceased husband and at the time of their marriage her husband transacted business with the Hall County National Bank. Charles Drake, who was shown to have been the cashier of the bank during the years 1910 and 1911, and president of the bank for the succeeding years, testified that the records of the bank, showing its customers' accounts and the daily deposits and withdrawals, were correctly kept; that customers were furnished written statements each month showing the condition of their accounts, and that such statements were correct. He said the statements offered in evidence were bank statements of the account of J. M. Lane, deceased, for the months of July, August, and October, 1910, and that they were copied out of the individual ledger for those months. This testimony was based solely upon his examination of the statements themselves. He said he did not know who made the statements but, from looking at them, he believed they were made by either Tom Drake

or Cicero Milam who were employes of the bank at that time, but that he did not know for sure who made them. He said he thought they were made out correctly but he could not swear to it, and that he did not make them himself nor see them made. He said that R. L. Madden was also an employe of the bank about that time but he could not identify the employe who made out the statements. It was shown that Tom Drake was then living in Childress County and that all of those whose duty it was to make out such statements were living at the time of the trial. The original books of the bank were not produced nor in any way accounted for and it was not shown that they were beyond the jurisdiction of the court.

█ We do not consider this testimony sufficient to establish a predicate for the introduction of the statements offered by appellant. Original books of banks and other institutions in which entries are made of accounts with customers, when properly authenticated, are admissible in evidence and constitute the best evidence of the entries made therein and the facts concerning the accounts of such customers. There was no evidence offered by appellant that the original books were not available. It has long been the established rule of evidence that statements from such books are not admissible, especially where the books themselves are not shown to be beyond the jurisdiction of the court or that they have been lost or destroyed. Even if the testimony had shown that the statements were compiled by certain employes of the bank and that they correctly reflected the entries in its books, still the statements would not have been admissible, because the books themselves were the best evidence. But even these facts were not established. Charles Drake, who was cashier of the bank at the time the statements were made, was not certain as to who made the statements in question. The most he could say was, he thought Cicero Milam made them but that two others were employed by the bank at the same time and he could not say which one of them compiled the statements. We find no merit in this contention of appellant and it will be overruled. Berry v. Joiner et al., 45 Tex.Civ.App. 461, 101 S.W. 289; Locke et al. v. Wallingford et al., Tex.Civ.App., 265 S.W. 1086; O'Hara et al. v. Texas Nat. Bank of Fort Worth, Tex.Civ.App., 299 S.W. 649; Clay et al. ᴠ. Richardson, Tex.Civ.App., 9 S.W.2d 413;

766

Block v. Tarrant Wholesale Drug Co., Tex. Civ.App., 138 S.W.2d 874.

Appellant's next contention is that the statements were admissible as ancient documents. They were dated in 1910, and the case was tried in February, 1942. The statements were therefore more than thirty years old and, in that respect, fell within what the law classes as ancient documents. This alone, however, is not a sufficient basis for the introduction of the documents in evidence. The rule in reference to such documents is founded upon the difficulty of proving the due execution of written instruments after the lapse of long periods of time. It does not affect their admissibility in evidence further than to dispense with proof of their genuineness under circumstances where they are otherwise admissible. Even if it had been shown that the statements reflected the correct condition of J. M. Lane's account, they would still have been nothing more than copies of entries in the bank's individual ledger and therefore secondary evidence only, which is not admissible unless it is shown that the best evidence is not available. We find no merit in this contention and it will likewise be overruled. Lancaster et al. v. Snider, Tex.Civ.App., 207 S.W. 560; Cooper et al. v. Williamson et al., 191 Ky. 213, 229 S.W. 707; Mackay v. Armstrong et al., 84 Tex. 159, 19 S.W. 463; Magee et al. v. Paul et al., Tex.Civ.App., 159 S.W. 325.

Appellant having produced no proof of her allegations, other than that which we have discussed, there was no issue to submit to the jury. The court, therefore, properly gave the peremptory instruction, and its judgment will be affirmed.