PITTMAN & HARRISON CO. v. KNOWLAN MACHINE & SUPPLY CO. (No. 6275.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 19, 1919. Rehearing Denied Dec. 17, 1919.)

1. APPEAL AND ERROR ☞846(6)—STATEMENT OF FACTS REVIEWED TO DETERMINE CORRECTNESS OF JUDGMENT.

Where there is a statement of facts filed, but no findings of fact or conclusions of law, motion for new trial, or bill of exceptions, the judgment on trial before the court without a jury will be held conclusive on the facts, unless defeated by some testimony that shows that another judgment should have properly been rendered; no request to file findings of fact or conclusions of law having been made.

2. APPEAL AND ERROR ☞931(1)—AFFIRMANCE IN ABSENCE OF CONCLUSIONS OF FACT.

In the absence of conclusions of fact, the appellate court will impute to the trial court full verity to its findings, and, if there is any issue of fact sufficient to sustain the judgment, it will be done.

3. PRINCIPAL AND AGENT ☞123(7) — EVIDENCE OF AUTHORITY OF SELLER'S AGENT TO SIGN CONTRACT FOR SEED GRAIN.

In suit for breach of contract for shipment of car of seed grain, evidence *held* to support conclusion that person who signed order for grain on behalf of defendant seller was its authorized agent to sign the contract, and that the contract was valid.

4. SALES ☞90—NO MERGER OF ORIGINAL CONTRACT IN NEW CONTRACT.

In suit for breach of contract for shipment of car of seed grain, *held*, under the evidence, that there was no new contract made or any merger of the original contract by one of a later date.

5. NOVATION ☞4—EVIDENCE SHOWING NO SUBSTITUTION OF NEW AGREEMENT.

Where plaintiff buyer of seed grain never accepted or agreed upon a change of price of any article specified in original contract except upon condition, *held*, there was no novation.

6. PRINCIPAL AND AGENT ☞170(3)—ALLEGED PRINCIPAL MUST REPUDIATE AGENCY PROMPTLY.

If G., who signed order given by plaintiff for seed grain, was not the agent of defendant seller, defendant should have promptly repudiated his agency at the time the order was received, and not continued negotiations with plaintiff on the order.

Error from District Court, Victoria County; John M. Green, Judge.

Suit by the Knowlan Machine & Supply Company against the Pittman & Harrison Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. C. Carsner, of Victoria, and French & Harney, of Sherman, for plaintiff in error.

R. L. Daniel, of Victoria, for defendant in error.

COBBS, J. This suit is for damages growing out of a breach of an alleged contract for the shipment of a car of seed grain, alleged to have been made by C. F. Gribble, traveling agent of plaintiff in error. The instrument, upon which the suit is predicated to establish the breach is as follows:

"Pittman & Harrison Co., Seedman.

"Sherman, Texas, 12—3—1917.

"Knowlan Machine & Supply Co., Victoria, Texas:

"We book your order for the goods named below to be shipped 10th February, 1918, to Victoria, Texas, via H. & T. C. and Southern Pacific R. R. Terms: Draft B/L attached through Levi Bank & Trust Company. Price basis being C. A. F. your station,

Remarks ....................................
100 bushels Surecropper corn at........$3.50
5,000 pounds Red Top cane at.........  7.00
5,000 pounds Amber cane at............  6.00
Bal. car Red Tag R. P. oats at.........   .92
All in even weight sacks.

"We give no warranty, either expressed or implied, as to the purity, productiveness, or any other matter of any of the seeds we sell, nor will we be in any way responsible for crops. If the goods are not accepted on these conditions, we are to have immediate notice.

"Our responsibility ceases when we deliver goods to carrier in proper shipping condition. Complaints of any kind must be made immediately for shortage or damage, must be accompanied by railroad expense bill bearing proper notations.

"On carlot sales, immediate shipment means 3 days; quick, 5 days; prompt, 10 days—exclusive of Sundays and legal holidays.

"No agreement recognized which is not plainly stipulated herein..

"Accepted: Knowlan Machine & Supply Co., By A. F. Knowlan. Pittman & Harrison Co., C. F. Gribble."

[1] This case was tried by the court without a jury, resulting in a judgment for $611.56 in favor of defendant in error. There is a statement of facts filed, but there are no findings of fact or conclusions of law, motion for new trial, bills of exception, or anything presented to the court below indicating the supposed errors committed.

There are no fundamental errors complained of or assigned. Defendant in error in reply, because there are no bills of exception, etc., contends, and presents but one proposition in the brief for that reason, that plaintiff in error has no standing here, and in support of that contention cites Stewart v. McAllister et ux., 209 S. W. 704. That case does not support the contention. There it was upon a trial before a jury upon special issues, where a different rule of procedure prevails. Trial here was before the court without a jury, and, no request to file findings of fact or conclusions of law having been made, it will be treated as a general judgment conclusive on the facts, unless defeated by some testimony

that shows another judgment than the one entered should have properly been rendered. Mackey v. Armstrong, 84 Tex. 160, 19 S. W. 463; Schofield et al. v. Tex. Bank & Trust Co., 175 S. W. 506.

[2] In the absence of conclusions of fact, the appellate court will impute to the trial court full verity to its findings, and if there is any issue of fact sufficient to sustain the judgment, it will be done. Hull v. Woods, 14 Tex. Civ. App. 590, 38 S. W. 256.

The first assignment is to the effect that the court erred in holding that C. F. Gribble had authority as agent to enter into a binding contract for the sale of the grain at the prices named to be delivered in February, 1918; and the second was that the date of delivery was so remote as to put defendant in error on notice that it had to be subject to confirmation and approval; and fifth, that the contract was so unusual and out of the ordinary as to put defendant in error upon notice and charge it with such information that a person of ordinary prudence and care would have gained by making inquiry as to authority of the agent; sixth, court erred in holding that Knowlan Machine & Supply Company did not accept the offer of December 8, 1917, as a substitute contract, and could not hold it on the old contract; eighth, in holding there was no custom of the trade requiring sales of grain and seed by traveling salesmen or brokers to be accepted and confirmed before becoming a binding contract. These assignments all relate to same matter and will be considered together.

The fourth assignment is somewhat confusing. It is as follows:

"The court erred in not holding that Knowlan Machine & Supply Company, having been notified that C. F. Gribble was not supplied with grain and seed quotations for the month of February, 1918, that Knowlan Machine & Supply Company were bound to ascertain C. F. Gribble's authority, and in entering into contract with C. F. Gribble, as agent of Pittman & Harrison Company, for a shipment of grain and seed for the month of February, 1918, with such knowledge in mind, contract at their own risk, and Pittman & Harrison Company having promptly repudiated the contract attempted to be made by C. F. Gribble, that the Pittman & Harrison Company were not liable upon the contract sued upon."

[3] The court is supported by the evidence that C. F. Gribble, who signed the order for goods dated December 3, 1917, was the authorized agent to sign the order. In fact, the letter of December 8, 1917, acknowledging receipt of the same, says:

"Your order for mixed car given our Mr. Gribble for mixed car shipment cannot confirm, especially the oats and Surecropper corn. It will be questionable whether or no we will be able to get up the Surecropper corn at all, as it is very hard to get hold of, and for oats we would have to charge 98 cents per bushel. Let us know if you will want us to book on that basis."

This letter neither repudiates the agency nor the order. It calls him "our Mr. Gribble," and continues the negotiations for a higher price for oats, using same order as a basis. It at least to that extent is an acknowledgment and ratification of the agency, and a recognition of the order for further negotiations to change the price of oats, expressing doubt as to being able to get the Surecropper corn at all, but even then not a refusal. There was considerable delay in answering, until December 26, 1917, wherein the reply was, "It will be satisfactory to charge 98 cents for the oats to fill out the car in weight, but we want the car shipped as ordered as we are depending on this shipment," and added certain other conditions thereto.

Again, on the 15th of December, 1917, plaintiff in error wrote, calling attention to the letter of the 8th of December, complaining there had been no reply to the letter of the 8th, stating the price for oats would be 98 cents, and saying: "Not hearing from you, we presume you want us to cancel. Please let us know about this." There was nothing said about not being able to furnish the Surecropper corn, nor that plaintiff in error desired to cancel the order. Defendant in error replied the price of oats was satisfactory and to ship car as ordered, as "we are depending on it," that "we would prefer that you increase the Red Top cane seed to 15,000 or 20,000 pounds so that you would not be required to put so many oats in the car at the same price as booked." and further said, "No. 2, about the Surecropper corn, we will expect this and would like to put a little June corn seed in at $3.50, say about 50 bushels," then requested to know by wire "if you can increase this order on Red Top to 20,000 pounds and also 50 bushels of June corn." If it so desired, "Fill the car up with the Red Top and let the oats go, but the Red Top must be at $7.00, and I would thank you to please wire me at once." On December 31, 1917, expressing surprise in the delay in answering the letters of 8th and 15th, it quoted prices on oats $1, Surecropper, $4 per bushel, $8.50, on the Red Top, and $7.75 on the Amber, and requested a wire upon the receipt of the letter. The reply is as follows:

"Victoria, Tex., Jan. 10, 1918.
"Pittman & Harrison Co., Sherman, Texas: This cancels all previous offers regarding specifications on car seed stuffs and feed oats booked with you. We want car shipped as per specifications and prices our order 3d ultimo. We have sold corn, cane, and oats in this car, and will have to make delivery, and want your confirmation wire immediately on shipment car as specified February 1st as per your order, December 3d.
"Knowlan Machine & Supply Company."

[4, 5] It is clear there was no new contract made or any merger of the original by one of any later date. Plaintiff in error refused to confirm the contract of December 3, 1917, in all particulars, but attempted to make a change therein by substituting a new price for oats, and· in the subsequent correspondence change the price of other articles. Plaintiff in error never accepted or agreed upon the change of price of any article in the original order except upon condition. So it is clear that the minds of the parties never met on a new contract or in any novation of the first, and the result of this case must depend upon the validity of the original order of December 3d. It is· shown the order was received in the due course of business dealings. The acts of C. F. Gribble, who signed its name to the order, was not repudiated, it did not then deny his agency or contend he was not authorized to make binding contracts, or claim that such had to be submitted to it for confirmation. It placed their refusal to confirm upon the ground that it might not get hold of the Surecropper corn and would have to charge 98 cents per bushel for the oats, made no mention of the Red Top or Amber cane, and desired to know "if you will want us to book on that basis."

It is not pleaded by defendant in error that there was any subsequent new contract made and entered into that in any way changed and canceled the original, but it is contended there was no contract at all as it was never confirmed. Nor does the defendant in error make such contention or insist upon any other contract or waive the one of December 3d. The contention is that there was but one contract, which was that of December 3d, and never released. The plaintiff in error contends further there was never any valid contract at all, because Gribble was not empowered or authorized to make such contracts, as he was making sales under limited authority, which required him to report all offers for confirmation, and his acts were never confirmed or ratified.

[6] The court has found from the evidence, in connection with the letters, there was a contract, and that Gribble was acting within the scope of his authority and in the capacity of a sales agent in negotiating and making valid sales as described. At least that is the effect of the judgment. These questions all involve findings of facts deducible from the evidence, and it will not be disturbed. If Gribble was not its agent, plaintiff in error should have promptly repudiated his agency at the time it received the order, and not have continued negotiations on it. In fact, it was never repudiated. Brennan & Son v. Dansby & Dansby, 43 Tex. Civ. App. 8, 95 S. W. 700.

The seventh assignment of error complains that the court erred in assessing the damages at the difference between the price of 92 in contract of December 3d and market price February 10, 1918, date of delivery, because it had agreed to pay 98 cents.

This assignment cannot be sustained; for the evidence justified the court in finding that there was no novation of the contract. It is true the plaintiff in error submitted an offer at 98 cents, which was conditionally accepted, but conditions were embraced therein which were declined. So the minds of the parties never met, and no contract other than · one of December 3, 1917, was ever made.

We have considered the assignments, and find no error in the judgment of the court, and it is affirmed.